Sonnie J. PERKINS, Appellant,

v.

Phil KWON, Appellee.

89–1003.

United States Court of Appeals,
Federal Circuit.

Sept. 22, 1989.

Watson T. Scott, Cushman, Darby & Cushman, Washington, D.C., argued, for appellant. With him on the brief was Nancy J. Linck, Washington, D.C.

Fred E. McKelvey, Sol., Office of the Sol., Arlington, Va., argued for amicus curiae, Commissioner of Patents and Trademarks.

Before MARKEY, Chief Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Sonnie J. Perkins appeals the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences ("the Board"), which held that neither party to an interference proceeding between Perkins and Phil Kwon was entitled to a patent.[1] The Board held Kwon to be the prior inventor, and cancelled the claims of Perkins' previously granted patent. 35 U.S.C. §§ 102(g) and 135(a) (1982 & Supp. V 1987). The Board also held that the count was unpatentable to Kwon because of an on-sale bar. 35 U.S.C. § 102(b) (1982).

There is no challenge on this appeal to the correctness of the Board's decisions in terms of §§ 102(b) and 102(b)/103, 102(g), and 135(a), on the evidence adduced. Perkins' challenge is to the authority of the Board to have decided the question of priority of invention and cancelled Perkins' claims, when it was determined by the

---

1. *Kwon v. Perkins*, 6 USPQ2d 1747 (Bd.Pat.App. & Int.1988); *on reconsid.,* Int. No. 101,424 (Bd. Pat. App. & Int. August 4, 1988).

Board that the invention of the count was unpatentable to Kwon.

Kwon has not participated in this appeal. The Commissioner of Patents and Trademarks has appeared as *amicus curiae,* and has argued for affirmance of the Board's authority to have made these decisions and performed these acts.

## Background

Sonnie J. Perkins is the inventor of United States Patent No. 4,456,257, filed on September 16, 1982 and issued on June 26, 1984. The patent describes and claims a golf swing plane sensor, used to improve a golfer's swing. Phil Kwon filed patent application Serial No. 631,294 on July 16, 1984 with twenty-five claims, all designated as corresponding to the interference count.

Following declaration of the interference Perkins moved for judgment pursuant to 37 C.F.R. § 1.633(a) (1985) on the ground that the invention of the count was unpatentable to Kwon based on Perkins' publication, sale, and the public use, of the claimed golf swing sensor at least as early as June 16, 1982. Perkins offered to supply proof thereof, and requested that this issue be deferred to final hearing before the Board. The examiner deferred the issue, stating that testimony was necessary to establish these allegations.

An expanded Board of nine members acted at final hearing. The Board was unanimous in its grant of priority of invention of the interference count to Kwon. The Board also unanimously agreed that the count was unpatentable to Kwon under § 102(b)/103, the § 102(b) prior art being Perkins' device that was sold some two years before Kwon's filing date.

Six of the nine Board members held that it was proper for the Board to determine priority of invention as between Kwon and Perkins, despite the Board's having also determined that the count was unpatentable to Kwon:

> [I]t shall be the policy of the Board to decide the question of priority when that question is before us at final hearing even though the subject matter in issue is concurrently held to be unpatentable

to one of the parties under 35 USC 102 or 103.

*Kwon v. Perkins,* 6 USPQ2d at 1750. Three Board members believed that the Board's authority ended when it determined that the count was unpatentable to Kwon, and that the question of priority should not be decided when the invention is not patentable to both parties to the interference. A further minority view, favoring reformation of the interference, is not pressed by Perkins on this appeal.

## The Issue

■ The question on appeal is whether it was appropriate for the Board to determine priority of invention in the interference, and to enforce the consequences thereof against Perkins, when the Board held that the count was not patentable to Kwon, a party to the interference.

## Discussion

This issue arises out of the consolidation of the two tribunals within the Patent and Trademark Office that had previously dealt separately with patentability (the Board of Appeals) and with priority (the Board of Patent Interferences), and the accompanying changes in interference practice. The statute that created the consolidated Board includes the provision, at 35 U.S.C. § 7(b):

> The Board of Patent Appeals and Interferences shall ... determine priority and patentability of invention in interferences declared under section 135(a) of this title.

35 U.S.C. § 135(a) was concurrently amended to include the provision:

> The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability.

Patent Law Amendments Act of 1984, Pub.L. No. 98–622, §§ 201–207, 98 Stat. 3383, 3386–89 (1984), enacted November 8, 1984.

Perkins argues that because Kwon was not entitled to a patent there was no basis for an interference between them, and therefore that Perkins' patent should stand as originally issued. Perkins objects to the

Board's decision of the question of priority of invention, arguing that the Board should simply have dissolved the interference when the count was determined to be unpatentable to Kwon. Perkins states that patentability to both parties is a long-standing condition precedent to the continuation, as well as the declaration, of an interference, and that it was improper for the Board to continue the interference and decide the question of priority. Perkins states that the decision of unpatentability as to Kwon resolved the entire controversy between the parties to the interference.

The determination that Kwon's application contained patentable subject matter was made, in the first instance, *ex parte* before the interference was declared. That was the practice before the consolidation of the two boards and other changes in interference rules, 37 C.F.R. §§ 1.201 *et seq.* (1984), and continues to be the practice. 37 C.F.R. §§ 1.601 *et seq.* (1985).[2] In this case, however, the reason for unpatentability of the subject matter to Kwon was not known to the examiner until it was raised by Perkins' motion after the interference was declared.

■ The implementing rules provide not only for the threshold determination under 37 C.F.R. § 1.603 or § 1.606 that the interfering subject matter is patentable to both parties, but that after an interference is declared a party may move for judgment on the ground that the interfering subject matter is not patentable to the opponent. 37 C.F.R. § 1.633(a). The rules contemplate that the issue will be decided on the motion, by the examiner-in-chief, 37 C.F.R. § 1.640(b), but also authorize "such other action which will secure the just, speedy,

and inexpensive determination of the interference." *Id.* In the case before us, the grant of Perkins' request that determination of the issue of patentability be delayed to final hearing was within this authority.

Perkins, and the minority of the Board, state that once Kwon had been found at final hearing to have no right to a patent on the invention of the count, the Board should have simply declined to decide the question of priority—or if decided, the Board should have treated this decision as conditional, to be given effect only if Kwon's claims met the criteria of patentability. It is pointed out that the deferral of the threshold question of patentability did not change the traditional requirement of patentability to both parties, and that when it was determined that the count was not patentable to Kwon, priority was no longer at issue.

The Commissioner, in support of the Board's decision, points out the expediency of resolution of all issues by the Board, on the possibility of appellate reversal of some but not all of the Board's rulings. The Commissioner emphasizes that the time-consuming delays inherent in the prior practice of piece-meal decisions in consecutive proceedings before separate tribunals contributed to this legislative change.

■ It appears from the legislative history that Congress established the new Board structure, whereby all issues of patentability and priority that arise in an interference proceeding can be decided in one proceeding, not to enable priority to be decided in a patentability dispute, but to enable patentability to be decided in a pri-

---

2. The Commissioner states that the prior practice as well as that here debated was and is within the Commissioner's discretion, pointing out that 35 U.S.C. § 135(a) never required a determination of patentability to any potential party before an interference was declared. We discern no substantiation for the existence of such discretion, for this threshold determination has been judicially and administratively recognized for decades. The Court in *Brenner v. Manson*, 383 U.S. 519, 528 n. 12, 86 S.Ct. 1033, 1038 n. 12, 16 L.Ed.2d 69 (1966) noted: "'The question as to patentability of claims to an applicant must be determined before any question

of interference arises and claims otherwise unpatentable to an applicant cannot be allowed merely in order to set up an interference.'" (quoting *In re Rogoff*, 261 F.2d 601, 606 (1958)). No change in this practice was made in the 1984 enactment that consolidated the boards, and the implementing regulations and procedure continue to require the presence of subject matter patentable to each applicant before an interference is declared. 37 C.F.R. §§ 1.603 and 1.606 (1988); Manual of Patent Examining Procedure §§ 2307.02 and 2308.02 (5th ed. 1983 & 1988 rev. 9).

ority dispute.[3] However, decision by the Board of all issues that are fully and fairly raised during the interference proceeding, whether related to patentability or priority, is in full accord with Congressional intent that PTO procedures be simplified as well as improved:

> By combining the two Boards into a single Board having jurisdiction to consider priority and patentability, it is expected that interferences will become simpler, more expeditious, and less costly. Under the bill all issues of patentability and priority which arise in an interference can be decided in a single proceeding rather than in a series of complicated *inter partes* and *ex parte* proceedings.

130 Cong.Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin. News 5827, 5837. *See also* 37 C.F.R. § 1.601 (1988) (the new interference rules "shall be construed to secure the just, speedy, and inexpensive determination of every interference"). As the Commissioner explained at 49 Fed.Reg. 48,416, 48,416 (1984), following public hearings and other commentary, "Through these new rules the PTO seeks to improve interference procedure so that the rights of parties in interferences are determined at an early date and the overall process of examining patent applications which become involved in interferences is simplified." Although Perkins relies on *Morgan v. Hirsch*, 728 F.2d 1449, 1453, 221 USPQ 193, 196 (Fed.Cir.1984), for its reference to the "wasteful" procedure of continuing that interference instead of resolving the question of patentability, the procedure there criticized need not arise under the new rules. *See, e.g.*, 37 C.F.R. § 1.658.

■ We agree with the Board that issues of patentability and priority that have been fully developed before the Board should be resolved by the Board. *Kwon v.*

*Perkins*, 6 USPQ2d at 1750. The Commissioner also states that although the Board is authorized to decide the issues of both priority and patentability under circumstances such as those of this case, it is discretionary with the Board as to whether it will resolve questions of patentability that arise during an interference proceeding, referring to the term "may" in the statute:

> 35 USC § 135(a).... The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability....

The legislative history, however, shows that Congress intended that if patentability is fairly placed at issue in the proceeding, it will be determined. As the Commissioner explained at 49 Fed.Reg. at 48,416, "The Patent Law Amendments Act of 1984 ... authorizes the Board to consider priority and patentability in interference cases." The word "may" in § 135(a) accommodates the situation when patentability is not placed at issue during the priority contest, but it would contradict the remedial purpose of the legislation if the Board could refuse to decide questions of patentability for which there had been adduced an appropriate record. *Accord* Manual of Patent Examining Procedure § 2300.02 (5th ed. 1983 & 1988 rev. 9) ("The object of the interference will be to resolve all controversies as to all interfering subject matter defined by one or more counts.")

It would similarly contradict the legislative purpose if the Board were to refrain from deciding priority, when the result of such restraint would be the issuance or preservation of a facially invalid patent. The Board, by resolving both priority and patentability when these questions are fully presented, settles not only the rights

---

**3.** Under prior interference practice certain issues of patentability, including the application of 35 U.S.C. §§ 102 and 103, were not deemed to be "ancillary to priority" and would not be considered during the interference proceeding. *Case v. CPC Int'l, Inc.*, 730 F.2d 745, 748, 221 USPQ 196, 199 (Fed.Cir.), *cert. denied*, 469 U.S. 872, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). There had evolved an elaborate body of judge-made

law as to what was and what was not ancillary to priority, contributing to the complexity of past interference practice. *See Tofe v. Winchell*, 645 F.2d 58, 64–65, 209 USPQ 379, 384–85 (CCPA 1981) (Markey, C.J., concurring). It is no longer necessary to determine whether an issue is ancillary to priority. *See* 130 Cong.Rec. 28,065, 28,072 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin.News 5827, 5837.

between the parties but also rights of concern to the public. The public interest in the benefits of a patent system is best met by procedures that resolve administratively questions affecting patent validity that arise before the PTO. To do otherwise is contrary to the PTO's mission to grant presumptively valid patents, 35 U.S.C. § 282, and thus disserves the public interest.

The decision of the Board is

AFFIRMED.