965 F.2d 1063
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Ching-Wu CHU, Appellant,
v.
Syed B. QADRI, Louis E. Toth, Michael S. Osofsky, Steven H.
Lawrence, Donald U. Gubser and Stuart A. Wolf, Appellees,
v.
Robert B. BEYERS, Edward M. Engler, Paul M. Grant, Stuart
S.P. Parkin, and Grace S. Lim, Appellees,
v.
Bertram J. BATLOGG, Robert J. Cava and Robert B. Van Dover, Appellees.
 No. 91-1319.
 United States Court of Appeals, Federal Circuit.
 April 7, 1992.
 
 Before MICHEL, Circuit Judge, BENNETT, Senior Circuit Judge, and PLAGER, Circuit Judge.
 MICHEL, Circuit Judge.
 
 
 1
 Chu appeals from the November 9, 1990 decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (Board), Interference No. 101,981, dismissing him from the interference because Chu failed to establish good cause why judgment should not be immediately entered against him, given the uncontested determination of the examiner-in-chief that under 35 U.S.C. § 112 (1988) Chu's claim corresponding to the count was unpatentable. Because the Board did not abuse its discretion, we affirm.
 
 DISCUSSION
 
 2
 After an interference has been declared, a party may file a preliminary "motion for judgment on the ground that an opponent's claim corresponding to a count is not patentable to the opponent." 37 C.F.R. § 1.633(a) (1991). Interference regulations contemplate that the examiner-in-chief may decide the patentability issue on the motion, but also authorize the examiner-in-chief to "take such other action which will secure the just, speedy, and inexpensive determination of the interference." 37 C.F.R. § 1.640(b) (1991). Thus, where evidence bearing on patentability is insufficient, the examiner-in-chief may defer determination of patentability until the final hearing before the Board. Cf. Perkins v. Kwon, 886 F.2d 325, 327, 12 USPQ2d 1308, 1310 (Fed.Cir.1989) (examiner properly deferred the patentability issue to final hearing upon request of 37 C.F.R. § 1.633(a) movant so that movant could supply evidence to establish his allegations). But such deferral plainly would be unnecessary, and indeed contrary to the mandate for expedition of 37 C.F.R. § 1.640(b), if the examiner-in-chief already has the benefit of a well-developed record on the issue of patentability. That was the case here. Therefore, the examiner-in-chief did not abuse his discretion or otherwise err in determining patentability pursuant to the motion.
 
 I.
 
 3
 Chu, however, contends his procedural due process rights have been violated. Chu alleges he first received notice that claim 94 was unpatentable because it included inoperative compositions in the examiner-in-chief's statement of reasons for granting Beyers, et al.'s motion for judgment, and therefore never had a fair opportunity to respond. Chu argues that if the motion had given proper notice of an overbreadth objection, Chu could have met the objection before the examiner-in-chief's decision by moving to amend his claim 94 to exclude the inoperative compositions. See 37 C.F.R. §§ 1.633(i) & (c)(2) (1991). Chu argues, however, that Beyers, et al.'s motion did not so notify him and that the examiner-in-chief raised this particular unpatentability basis sua sponte. A due process violation then allegedly occurred when Chu did not thereafter have an opportunity to respond to the nonpatentability ruling because the Board denied his request for delay of judgment until final hearing or, alternatively, for "consent to entry of an amendment" to claim 94. See generally Joint Appendix at A306-12.
 
 
 4
 In assessing Chu's due process argument, we first consider whether the motion gave adequate notice of an overbreadth objection. The opening sentence of the motion states: "The party Beyers et al [sic] hereby moves for judgment against the party Chu on the grounds that Chu's claims corresponding to the count in the Interference are not patentable to Chu." Id. at A85 (emphasis added). After citing as its legal basis the enablement requirement of 35 U.S.C. § 112, the motion specifically asserts that the Chu "application" lists "numerous totally inoperative alleged embodiments." Id. Among the compositions included in Chu's application that Beyers, et al. identified as inoperative were compositions containing the elements scandium, cerium, praseodymium, terbium, and strontium. These same inoperative compositions also appear in claim 94. Compare id. at A18 with id. at A64.
 
 
 5
 A fair reading of the motion in context convinces us it gives adequate notice that claim 94 is unpatentable for including such inoperative compositions. After all, claim 94 was the only remaining claim corresponding to the count.[1] Moreover, Chu was specifically on notice that Beyers, et al. alleged that his claims were unpatentable under 35 U.S.C. § 112 as not enabled.
 
 
 6
 Appellant's argument that the motion misleadingly directs attention only to the "application" is unpersuasive. Unquestionably, claims are a required part of a patent application. 35 U.S.C. §§ 111 & 112 (1988). Moreover, the same inoperative compounds that were listed in the application were also listed in the claim. And, the motion pinpointed the inoperative compounds as the basis of the enablement objection. In any event, questions of enablement necessarily subsume questions of claim breadth. Squires v. Corbett, 560 F.2d 424, 434, 194 USPQ 513, 520 (CCPA 1977). Since claim 94 includes inoperative compositions described in the application,[2] and since Chu was aware that claim 94 was alleged to be unpatentable under 35 U.S.C. § 112, in response to the Beyers, et al. motion Chu should and could have moved immediately to amend his claim. See 37 C.F.R. §§ 1.633(i) & (c)(2). Appellant's later request before the Board for leave to amend claim 94 came too late. Thus, the Board's refusal to defer judgment or to grant leave to amend did not violate Chu's right to due process or constitute an abuse of discretion.
 
 II.
 
 7
 Because following his dismissal the interference proceeding continued with a count that is identically overbroad compared to Chu's claim 94, Chu also contends that it was an abuse of discretion not to defer judgment or permit amendment. That is, Chu argues good cause existed as a matter of law for the alternative relief sought in his response to the show cause order. The legal premise for this argument is that the Board incorrectly held that patentability of at least one claim is a condition precedent to a party's remaining in an interference proceeding and thus to a finding of good cause.
 
 
 8
 We do not address the validity of appellant's legal position because his argument is incomplete. Chu has not carried his argument to the next logical step. Assuming, without holding, that the Board made an error of law as Chu contends, we cannot simply find good cause as a matter of law, reverse the Board's judgment, reinstate Chu as a party to the interference and require a ruling on priority. See 37 C.F.R. § 1.640(e) (1991) ("[T]he Board shall enter a judgment in accordance with the order [to show cause] unless ... the party against whom the order issued files a paper which shows good cause why judgment should not be entered.") (emphasis added). Chu's response to the show cause order did not establish patentability. He therefore failed to carry his burden of proof. As judgment against Chu was a foregone conclusion, the Board would have merely committed harmless error in declining to delay entry of judgment until the final hearing.
 
 
 9
 In his response to the show cause order, Chu fully outlined the action that he wanted the Board to take. But he failed to explain why the Board would not eventually have to enter judgment against him, particularly since Chu continued to acquiesce in the examiner-in-chief's unpatentability determination. As the Board noted, "Chu did not request that a final hearing be set to review the decision on the motion which was dispositive or on any other motion; nor did Chu file a motion requesting a testimony period." Joint Appendix at A2. Therefore, Chu was a victim of his own continuing procedural default. Also, since Chu had adequate notice of the claim overbreadth objection, he could have avoided the show cause order altogether if he had properly moved to amend claim 94 during the pendency of Beyers, et al.'s motion. Furthermore, as the Board correctly observed, Chu's argument that a second interference would be required because he could amend claim 94 upon return to ex parte prosecution ignores 37 C.F.R. § 1.658(c) (1991), which prevents such action.
 
 
 10
 To the extent Chu argues it was unjust to dismiss him from an interference proceeding with an identically overbroad count, we note that patentability is required for a party's claims, not for the count. We agree with Chu that the Board should decide all issues of patentability and priority that have been fully and fairly raised. See 35 U.S.C. §§ 7(b) & 135(a) (1988); 37 C.F.R. § 1.601 (1991); Perkins, 886 F.2d at 328, 12 USPQ2d at 1310-11. But Board decisional efficiency would be ill-served if we insisted on a priority determination for a claim Chu can neither patent as is, nor, at this point, amend. Under these circumstances, a priority determination would be a waste of time and resources.
 
 III.
 
 11
 Chu hints at two additional facts as supporting good cause to defer judgment or to permit amendment. First, Chu notes it was the Patent and Trademark Office that suggested the addition of claim 94 for purposes of the interference. Joint Appendix at A59-60. Nevertheless, an interference party bears responsibility for the patentability of his claim, and, in any event, Chu could have timely amended the overbroad claim. Thus, who suggested the claim is irrelevant.
 
 
 12
 Second, Chu observes the examiner-in-chief deferred Chu's motion for judgment against Batlogg, et al. until final hearing. Id. at A292. In fact, however, the basis of the Batlogg deferral works against Chu. As in Perkins, supra, the examiner-in-chief deferred judgment because the movant "believes that testimony is necessary to support the motion for judgment." Joint Appendix at A292. As to Beyers, et al.'s motion, by contrast, Chu did not request a testimony period. In any event, at most Perkins stands for the proposition that the movant may be entitled to a deferral, while Chu is not the movant but the respondent. Furthermore, whereas Chu acknowledged the overbreadth of his claim 94, Batlogg, et al. never conceded the basis of Chu's motion. It is therefore disingenuous for Chu to contend that the examiner-in-chief's deferral of Chu's motion against Batlogg, et al. requires deferral of the Beyers, et al. motion against Chu. In sum, neither fact Chu points to actually supports deferral much less establishes good cause as a matter of law.
 
 
 13
 As Chu's response to the show cause order fails to show any cause, we cannot say the Board abused its discretion or committed legal error in failing to find good cause. Nor did the Board abuse its discretion in entering the judgment against Chu for nonpatentability before final hearing. In contrast to Perkins, in the present case there was no need to develop evidence regarding patentability.
 
 
 
 [1]
 In fact, Chu himself motioned to decorrespond from the count all but claim 94. Joint Appendix at A268
 
 
 [2]
 Chu has never denied that his claim 94 includes inoperative compositions. His request for leave to amend the claim concedes as much