NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-1098
(Interference No. 105,146)

FARIS W. MCMULLIN,

Appellant,

v.

FRANCIS C. CARROLL,

Appellee.

_____

DECIDED:  October 31, 2005

_____

Before MICHEL, Chief Judge, NEWMAN, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This is an interference case.  The Patent and Trademark Office's Board of Patent Appeals and Interferences ruled in favor of appellee Francis C. Carroll and against appellant Faris W. McMullin on the ground that the specification of McMullin's patent application did not provide an adequate written description of the invention set forth in the count.  We hold that the Board's decision was not legally flawed and that its factual findings were supported by substantial evidence.  Accordingly, we affirm.

I

In December 1996, McMullin filed a provisional application for a patent directed to a cleat designed to provide traction for golf shoes and shoes used in other turf sports. In the initial application and later related applications that shared a common specification, McMullin explained that the recited cleat would provide traction on turf while withstanding abrasion when being worn on hard surfaces, and that unlike a conventional metal cleat it would not penetrate so deeply as to damage the grass plants making up the turf.

The recited cleat consisted of a flange from which protrusions extended downward to provide traction. The protrusions on each cleat were described as having a "low profile," i.e., having a height "sufficient to engage blades of grass in the turf to provide traction substantially without puncturing the turf." In addition, each cleat was described as having a "bearing portion" in the clear area between the protrusions "for bearing the weight of the user." The bearing portion was described as having a height "low enough to avoid interfering with the ability of the protrusions to provide traction on turf, but high enough that on a hard surface it engages the surface, and spares the protrusions from bearing the wearer's weight against the hard surface." The application further described each protrusion as extending from the flange at an angle "measured relative to a normal to the plane defined by the edge [of the flange], between about 5° inward . . . to about 15° outward." Preferably, the application stated, "the angle is 0°." The application also stated that, as shown in one of the figures, "the preferred axis . . . of each traction protrusion . . . could extend outward . . . by an angle . . . of up to about 15°." As an alternative, the application stated, in the preferred embodiment shown in

another figure "the preferred axis . . of each traction protrusion . . . could extend inward . . . by an angle . . . of up to about 5°."

In 1997 and 1998, Carroll filed applications that matured into two issued patents, U.S. Pat. Nos. 5,794,367 ("the '367 patent") and 6,530,162 ("the '162 patent"). Those patents described cleats for a sports shoe in which protrusions, or traction teeth, projected from the face of each cleat at "an outward angle to provide lateral stability and traction through the plane of a sports swing." The outwardly angled protrusions also served "to reduce damage to putting green surfaces for example," and to facilitate wear "in an outward manner to allow the traction teeth to maintain the outward angle needed to provide lateral traction throughout the life of the cleat." The two patents included claims reciting "a golf shoe cleat" with a plurality of traction teeth in which each traction tooth or the outer surface of each tooth had "an outward angle" or "outward angulation" to provide "lateral stability and traction through the plane of a golf swing" ('367 patent, claim 5; '162 patent, claim 10).

Contending that his application and the Carroll patents contained overlapping subject matter, McMullin cancelled his original claims and substituted a number of claims copied from Carroll's patents in order to provoke an interference. An administrative patent judge declared an interference between the McMullin application and the two Carroll patents. The interfering subject matter was defined by a single count, the text of which was identical to claim 10 of the '162 patent and effectively identical to claim 81 of the McMullin application. The administrative patent judge designated claims 1-16 of Carroll's '367 patent, claims 1-11 of Carroll's '162 patent, and claims 61-81 of McMullin's application as corresponding to the count. Because of their

respective priority dates, McMullin was designated as the senior party and Carroll was designated as the junior party.

Among the preliminary motions presented to the Board was Carroll's motion challenging all of McMullin's claims corresponding to the count as being without written description in the specification of McMullin's application. Carroll argued that McMullin's specification disclosed traction teeth (or protrusions) that were outwardly angled from the cleat base, but only up to an outward angle of 15°. According to Carroll, the specification did not disclose an outward angle of more than that amount. As a result, Carroll argued, the claims to traction teeth with an unrestricted outward angle were not supported by McMullin's specification.

The Board agreed and held that Carroll had established by a preponderance of the evidence that McMullin's application did not "reasonably convey to one with ordinary skill in the art that McMullin possessed . . . the idea that each traction tooth or an outer traction surface thereof has an outward angle or angulation that is not limited to a particular range or subset of angles." Accordingly, the Board granted Carroll's motion and held that the claims McMullin added for purposes of the interference were unsupported by McMullin's disclosure. Having so ruled, the Board then turned to McMullin's motion that the claims of Carroll's '162 patent be held unpatentable for obviousness. The Board ruled that because of its disposition of Carroll's motion, McMullin did not have standing to contest priority or attack the patentability of any of Carroll's involved claims. Accordingly, the Board denied McMullin's motion without reaching the merits of the obviousness issue.

McMullin first argues that the Board erred in ruling that his application did not provide sufficient support for the count. We review the Board's decision under a deferential standard. Although questions of law are subject to de novo review, the question whether an application complies with the written description requirement of 35 U.S.C. § 112, para. 1, is a question of fact, which we review for substantial evidence. See Bilstad v. Wakalopulos, 386 F.3d 1116, 1121 (Fed. Cir. 2004); Singh v. Brake, 317 F.3d 1334, 1343 (Fed. Cir. 2003).

In support of his challenge to the Board's decision on the written description issue, McMullin first contends that the Board effectively placed the burden of proof on him rather than on Carroll with respect to whether his application contained sufficient disclosure under section 112, paragraph 1. There is no merit to that contention.

At the outset of its discussion, the Board properly stated that Carroll bore the burden of proof to show that McMullin's specification did not reasonably convey to the artisan that McMullin had possession of the subject matter of the claims at issue in the interference. Based on the evidence before it, the Board concluded that Carroll had "established by a preponderance of the evidence that the specification of McMullin's application . . . does not reasonably convey to one with ordinary skill in the art that McMullin possessed . . . the idea that each traction tooth or an outer traction surface thereof has an outward angle or angulation that is not limited to a particular range or subset of angles." Although the Board discussed in detail the evidence and arguments offered by both parties, nothing in the Board's treatment of the issue supports

McMullin's assertion that the Board shifted the burden of proof to McMullin in the course of that discussion.

McMullin further argues that the Board improperly disregarded a previous Board decision relating to the same application, in which the Board held that the added claims of McMullin's application were not invalid for failing to satisfy the written description requirement of section 112, paragraph 1. The Board's decision in that case, however, was based on an entirely different written description issue. In the previous decision, the issue was whether the application provided support for the limitation referring to the "wear pad" at the center of the outer face of the cleat. That decision had no bearing on the issue before the Board in this case, which was whether the application provided support for the limitation reciting traction teeth directed outward at any angle, including angles substantially greater than 15°.

McMullin next argues that Carroll failed to carry its burden of proof because it submitted "no real evidence" on the written description issue. In support of that argument, McMullin criticizes Carroll's argument that McMullin's application did not point to any particular advantages of the embodiment with an outward angulation as compared to the embodiment having zero angulation or an inward angulation. McMullin notes that his application referred to protrusions having inward angles, no angle at all, and outward angles as providing enhanced traction. He further contends that Figure 6 of his application, which shows outwardly angled protrusions, inherently provides traction and thus supports the full range of the claimed subject matter.

McMullin's argument regarding enhanced traction is based on the assertion that cleats with protrusions having any outward angle, including the entire range of outward

angles greater than 15°, would provide traction similar to that provided by protrusions having angles within the range specifically described in the application. The problem is that the assertion is unsupported. Neither McMullin's disclosure nor any evidence in the record indicates that protrusions having an outward angle of substantially more than 15° would provide traction similar to that provided by the disclosed protrusions.

More broadly, McMullin argues that the Board improperly construed his disclosure as limited to the preferred embodiments set forth in his application. We disagree with that characterization of the Board's decision. The Board observed that nothing in the application indicates that the outward angle of the traction teeth could be greater than 15°. Rather, the application describes the angle of the traction teeth as being "between about 5⁰ inward . . . to about 15⁰ outward," without indicating that those angles are merely a preferred subset of the angles contemplated for the traction teeth of the invention. In the sentence immediately following disclosure of "an angle . . . between about 5⁰ inward . . . to about 15⁰ outward," the application states, "Preferably, the axis of each protrusion is parallel to the normal (i.e. the angle is 0⁰)." That language seems to indicate that McMullin contemplated a closed range of angles from 5⁰ inward to 15⁰ outward, with 0⁰ being the preferred embodiment.

The application later refers to the "preferred embodiment" of the disclosed cleat shown in Figure 6 and states that the "preferred axis . . . of each traction protrusion . . . could extend outward . . . by an angle . . . of up to about 15°." It adds that the "preferred axis" shown in Figure 7 could extend inward by an angle "of up to about 5°." While the portion of the application that discusses Figures 6 and 7 uses the term "preferred" several times, the permissible angulation of the traction teeth is stated to be "up to

05-1098                                                      7

about 15° [outward]" and "up to about 5° [inward]." That passage thus does not provide clear support, either expressly or by implication, for traction teeth extending outward at an angle substantially greater than 15°.

Moreover, when asked by the Board to "[s]how us something in your spec that shows you appreciated an angle that's outside of the range from minus 5 to plus 15," McMullin's counsel was unable to point to any part of the specification that did so. The Board therefore did not err by interpreting McMullin's disclosure as supporting only the range of angles recited in the application, as opposed to supporting the full scope of the added claims.

McMullin's next argument is that if McMullin's application is insufficient, so are the specifications of Carroll's patents, because they disclose only a single preferred embodiment of a traction tooth having an outward angle of 37½°. Setting aside the point that the reference in Carroll's disclosure is expressly to "one preferred embodiment," the Board did not address the adequacy of Carroll's disclosure, nor was it required to do so. Under the Board's regulations, when an interference is declared between an issued patent and an application, one of the preliminary issues is whether the application contains written description support for the claims at issue in the interference. If it does not, the applicant is deemed to lack standing, and the interference is dismissed without the need to address the patentability of the issued claims. 37 C.F.R. § 41.201 (2005). It was therefore unnecessary for the Board to decide whether Carroll's disclosure was adequate to support his issued claims.

Finally, McMullin argues that the Board's decision is contrary to the principle set forth in this court's decision in Bilstad v. Wakalopulos, 386 F.3d 1116 (Fed. Cir. 2004),

i.e., that the disclosure of a single species constitutes sufficient support for a claim to an entire genus if the species would reasonably convey to a person of skill in the art that the inventor possessed the genus, rather than merely the disclosed species. See id. at 1124. The Board's opinion reflects that the Board understood that legal principle but simply regarded it as inapplicable to the facts of this case.

The application at issue in Bilstad disclosed a sterilization apparatus having a moveable member capable of manipulating the objects to be sterilized. The Board held that because the appellants' application described manipulating objects "in a small number of directions" and did not describe manipulating objects "in a large number of directions," the application did not contain adequate support for a claim reciting a device capable of "manipulating objects in a plurality of directions." Bilstad, 386 F.3d at 1119. This court reversed and remanded, holding that the Board had "never truly discussed the understandings of persons skilled in the art and whether Bilstad's written description would reasonably convey to a person skilled in the art that Bilstad had possession of the claimed subject matter at the time of filing." Id. at 1125. We held that the Board failed to conduct any "analysis of what one skilled in the art would have understood from the Bilstad disclosure or the degree of predictability of technical variations in this field of art." Id. at 1126. We stated that the Board erred in concluding that the disclosure of manipulation in a small number of directions was insufficient to support the claimed manipulation of objects in a "plurality" of directions, because the Board failed "to consider the knowledge of one skilled in the art and the level of predictability in the field." Id. We therefore remanded the case for the Board to determine "whether Bilstad's disclosure of manipulation in a small number of directions would reasonably

convey to a person skilled in the relevant art that Bilstad had possession of manipulation in a plurality of directions as of his filing date." Id.

In this case, contrary to McMullin's contention, the Board did not apply an incorrect legal test to the question of the adequacy of his disclosure. In arguing that the Board applied an incorrect legal standard, McMullin focuses on the Board's statement that counsel for McMullin "evidently has failed to appreciate that having a description for a narrow article falling within the scope of a broad claim is not the same as having a description for the broader concept itself that is reflected in the claim." McMullin adds that the Board in this case "specifically rejected the standard that this Court pointed to in Bilstad, namely what one skilled in the art would discern from the examples that the specification provides." In support of that contention, McMullin cites a statement by the Board that section 112, paragraph 1, requires an applicant to "describe the claimed invention with all its features and not just that which would render the claimed invention obvious to one with ordinary skill in the art."

The passages on which McMullin relies do not demonstrate a departure by the Board from the principles set forth in Bilstad. First, the Board was correct that describing a "narrow article" is "not the same as having a description for the broader concept." Contrary to McMullin's suggestion, to state that principle is not to adopt the much different proposition that a disclosure of embodiments consisting of one or more species within a genus can never suffice to support a claim to the entire genus or to some portion of the genus beyond the particular disclosed species. Indeed, the Board made clear that it understood that the written description for a claim with broad scope "does not require a description of every possible embodiment falling within that scope."

The problem with McMullin's application, the Board wrote, was that it "does not reasonably convey that the inventor at the time of filing the application actually contemplated or possessed the idea that the outward angle . . . can be greater than 15°." Second, the Board's statement that a disclosure is insufficient if it merely reveals something that would make the claimed invention obvious is a well-settled and correct statement of law. See Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) ("The question [of adequate written description] is not whether a claimed invention is an obvious variant of that which is disclosed in the specification."); Martin v. Mayer, 823 F.2d 500, 504-05 (Fed. Cir. 1987) (same).

The Board repeatedly referred to the test for written description as being what one of ordinary skill in the art would understand, based on the applicant's disclosure, that the applicant possessed. For example, in language virtually identical to that subsequently used by this court in Bilstad, the Board held that McMullin's specification "does not reasonably convey to one with ordinary skill in the art that McMullin possessed [on the application filing date] the idea that each traction tooth or an outer traction surface thereof has an outward angle or angulation that is not limited to a particular range or subset of angles." The Board elsewhere recited the proper test as whether "McMullin's specification reasonably convey[s] to one with ordinary skill in the art that the invention so described includes an outward angle . . . that can extend beyond 15°." Later in the opinion, the Board again correctly stated the test as being "what the specification tells one with ordinary skill in the art about what inventor Faris W. McMullin possessed or appreciated," that is, "what the specification conveys to one with ordinary skill in the art about the ideas possessed by the inventor at the time of filing of

McMullin's involved application." Finally, following its analysis of the record in this case, the Board concluded that McMullin "advanced no persuasive reasoning or supporting evidence on why one with ordinary skill in the art would read anything said about the small range from minus 5° to plus 15° as being equally true for all outward angles without restriction." Accordingly, we find no merit in McMullin's contention that the Board applied an incorrect rule of law contrary to this court's decisions in cases such as Bilstad.

Because the Board applied the proper legal test to the written description issue presented by this case, the question on this appeal reduces to whether substantial evidence supports the Board's factual finding that McMulin's specification does not disclose traction teeth directed outward at angles substantially greater than 15°. Under that standard, we are not prepared to hold that the Board erred. As noted, the specification refers only to angles in the range between 5° inward to 15° outward, and the specification does not clearly indicate that the designated range is merely exemplary. Moreover, Carroll introduced the statement of an expert witness that a person of ordinary skill in the art would not have understood the disclosure in the specification to suggest that the inventor possessed traction teeth directed outward at angles substantially greater than 15°, while McMullin introduced no contrary evidence at all. Under these circumstances, we conclude that there was adequate support for the Board's factual conclusion that the written description requirement was not satisfied.

McMullin relies heavily on the statement by Carroll's expert witness in his deposition that at the time of filing, McMullin's specification indicated that "he did have possession of a cleat that would have outward angulation." In McMullin's view, that

statement constitutes an admission that McMullin's application demonstrated possession of an outward angulation of any dimension and thus supports his contention that the McMullin application satisfied the written description requirement with respect to the count. The Board, however, interpreted that statement as indicating nothing more than that McMullin's specification disclosed traction teeth that pointed outward to some extent and thus was not inconsistent with Carroll's position that the specification disclosed traction teeth that pointed outward by up to 15°, but not more. In particular, the Board disagreed with McMullin's argument that the expert's acknowledgement that McMullin possessed a certain range of outward angulation amounts to an admission that McMullin possessed "the general idea of an outward angulation that is unrestricted to any particular range." The Board's interpretation is certainly permissible, particularly in light of the expert's testimony, later in his deposition, that nothing in McMullin's specification discloses angles as large as 50°. We therefore do not accept McMullin's invitation to treat the expert's deposition statement as an admission sufficient to demonstrate that McMullin had possession of the full scope of the count. [1]

In sum, we hold that substantial evidence supports the Board's factual finding that "McMullin's involved specification does not have written description for an angle

---

[1]    McMullin further argues that we should ignore the evidence from Carroll's expert (other than the one statement that McMullin regards as a damaging admission), because the Board stated that it did not credit the expert's declaration testimony "with much significance" in light of the expert's focus on manufacturing considerations to explain why a person of skill in the art would prefer an outward angle of "up to about 15°" over an outward angle of greater than 15°. The Board did not say, however, that it disregarded the expert's evidence altogether, and in any event the substantial evidence standard of review requires us to consider all the evidence supporting the Board's factual findings, not just those portions of the evidence on which the Board has explicitly relied. See In re Huston, 308 F.3d 1267, 1281 n.9 (Fed. Cir. 2002).

that is outside of the particular narrow range, from 5º inward to 15º outward," and that McMullin's application therefore does not indicate possession of the full breadth of the disputed claims. Accordingly, we uphold the Board's decision denying McMullin standing to contest priority.

III

McMullin next argues that even if it was correct for the Board to rule against him on the written description issue, the Board erred by dismissing the interference without addressing the patentability of Carroll's claims, which McMullin had challenged through a preliminary motion of his own. We agree with the Board that under the circumstances of this case, where the Board made a threshold finding that the subject matter of McMullin's application did not provide written support for the subject matter of the count, it was not error for the Board to decline to address McMullin's challenge to the patentability of Carroll's claims.

This court has held that a "threshold issue" is one that "should be addressed by the Board at the preliminary stage of an interference before proceeding to the merits." Berman v. Housey, 291 F.3d 1345, 1351 (Fed. Cir. 2002). The Board's current regulations pertaining to interference proceedings identify several "threshold issues" and provide that if any of those threshold issues is "resolved in favor of the movant," that decision "would deprive the opponent of standing in the interference." 37 C.F.R. § 41.201 (2005). Those threshold issues include no interference in fact, repose under 35 U.S.C. § 135(b), and unpatentability for lack of written description of an involved application claim. The Patent and Trademark Office has included written description as a threshold issue because of the "perception that some applicants would copy a claim

simply to provoke interferences . . . regardless of whether [they] had actually invented the same subject matter as the [opposing] patentee had claimed." 69 Fed. Reg. 49960, 49991 (Aug. 12, 2004). Because the Board determined that McMullin's application lacked sufficient written description to support the claims on which the interference was based, the Board ruled that McMullin lacked standing and therefore dissolved the interference.

By statute, the Board is authorized in an interference proceeding to decide not only the issue of priority, but also any issues of patentability that may be raised incident to the interference proceeding. 35 U.S.C. § 135(a). This court has held that ordinarily it is proper for the Board to decide any such patentability issue that is "fully and fairly raised during the interference proceeding." Perkins v. Kwon, 886 F.2d 325, 328 (Fed. Cir. 1989). This case differs from cases such as Perkins, however, because the Board's finding on the written description issue is one that the Board's regulations characterize as a threshold issue that, as decided, would deprive McMullin of standing in the interference. Thus, the Board's finding against McMullin on that issue was in effect a finding that McMullin's application does not interfere with the subject matter of the count. The interference was therefore "mistakenly declared." See Berman v. Housey, 291 F.3d 1345, 1353 (Fed. Cir. 2002) (distinguishing Perkins by observing that the Board in Berman properly terminated an interference involving a threshold issue that was initially overlooked). Because the Board permissibly treated the written description issue as a threshold issue going to the question whether the interference was properly declared, its decision to discontinue the interference without first resolving the

patentability issue is not in conflict with the Board's statutory obligation to decide issues of patentability that are properly presented in the course of an interference proceeding.

The cases on which McMullin relies do not support his contention that the Board was required to decide the patentability issue, because none of them involve a determination that the interference was not properly declared. See In re Gartside, 203 F.3d 1305 (Fed. Cir. 2000) (holding that it was within the Board's discretion to decide issues of patentability after the opposing party had withdrawn from the interference); Schulze v. Green, 136 F.3d 786 (Fed. Cir. 1998) (upholding the Board's authority to decide patentability after it was clear that the opposing party would lose on priority); Wu v. Wang, 129 F.3d 1237 (Fed. Cir. 1997) (holding that it was within the Board's discretion to decide the patentability of Wu's claims where judgment was not rendered against Wang until the final judgment in the interference); and Guinn v. Kopf, 96 F.3d 1419 (Fed. Cir. 1996) (noting that it was not in dispute whether the interference was properly declared and holding that Guinn's disclaimer of all claims relating to the count did not divest the Board of jurisdiction over the interference). In this case, unlike in each of the cited cases, the Board's decision to terminate the interference without reaching the issue of the patentability of Carroll's patents was based on the Board's determination, consistent with its regulations, that the dispositive issue was a threshold issue going to whether the interference was properly declared. In that setting, we sustain the Board's dismissal of McMullin's motion challenging the patentability of Carroll's issued claims.