45 C.C.P.A.(Patents)

**John D. RIESER, Appellant,**

v.

**William A. WILLIAMS, Appellee.**

**Patent Appeal No. 6367.**

United States Court of Customs
and Patent Appeals.

May 23, 1958.

George B. White, San Francisco, Cal.,
for appellant.

Paul & Paul and Austin R. Miller, Philadelphia, Pa. (Henry N. Paul, Jr., Philadelphia, Pa., of counsel), for appellee.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY and RICH, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the subject matter in issue in interference No. 86,744 to the senior party, William A. Williams, the appellee here. The invention in issue is an adjustably mounted speed change unit defined in three counts. Count 1, which is typical, reads as follows:

"1. A speed change transmission comprising, a driven shaft, a journal support for said driven shaft, a prime mover and a speed change device operably coupled to form a speed change unit, said speed change device having a power take-off including means to couple it rigidly about a portion of said driven shaft, a universal support for said speed change unit including, a support element, a spherical portion on said support element, a base member adapted to be secured to a foundation and adjustably engaging said spherical portion for supporting said support element, said spherical portion being coaxial with the longitudinal axis of said power takeoff, and said rigidly coupled driven shaft being journalled in said support element for supporting said speed change unit so as to permit said universal support to position said speed change unit to compensate for parallel and angular mounting misalignment between said longitudinal axis and said base member."

The counts originated in the patent of appellant, John D. Rieser, which was granted July 22, 1952, on an application filed March 30, 1951. The Williams'

application here involved was filed October 19, 1950.

The Rieser patent discloses a unitary device comprising a motor and a speed change gear mechanism, connected by a belt and supported on a common mounting means. The mounting means comprises a laterally extending projection having a convex spherical surface. The axis of a hollow output shaft, which is driven by the change speed mechanism, passes through the center of the sphere which forms the above-mentioned surface, and the shaft is referred to in the counts as being "coaxial" with that surface. The spherical surface of the projection is received in a correspondingly shaped concave portion of a bracket member which is adjustably mounted on a horizontal portion of the frame of the machine or other device which is to be driven. The shaft of the driven device extends coaxially into the hollow output shaft of the speed change mechanism and is rigidly secured thereto.

The Williams' application discloses a speed change device which in one embodiment comprises a gear casing having a lateral projection with a convex spherical surface which is received in and supported by a corresponding concave spherical portion of a bracket member supported adjustably on a vertical surface of the frame on which the pulley to be driven by the device is mounted. The speed change device includes a hollow output shaft which passes through the lateral projection and is adapted to receive and be rigidly secured to the shaft of the driven pulley. Power is supplied to the device through a pulley mounted on an input shaft coaxial with the output shaft, but it is stated in the specification of the application that "an incorporated electric motor" may be used instead.

Rieser makes three separate contentions as to why he should have been awarded priority, namely; first, that Williams is estopped to contest priority by reason of the fact that he did not copy the claims corresponding to the counts in issue from Rieser's patent until more than a year after it was issued; second,

that the disclosure of Williams' application does not support the counts; and third, that Rieser conceived the invention in issue prior to Williams and exercised reasonable diligence over the critical period in reducing it to practice. These contentions, as to each of which the Board of Patent Interferences ruled adversely to Rieser, will be considered in the order above given.

It is not disputed that Williams failed to present the actual claims here in issue in his application until more than a year after they appeared in Rieser's patent. The Board of Patent Interferences held, however, that an estoppel under 35 U.S.C. § 135 did not exist for the reason that allowed claim 6 of the Williams' application, which was included therein as filed, defines substantially the same subject matter as the interference counts. Claim 6 of Williams, and claim 1, on which it is dependent, read as follows:

"1. In combination, a powered speed change device having a casing and an output shaft extending through one side of the casing and adapted to be fixedly attached in axial relation to one end of the shaft of a machine or apparatus to be driven; a supporting bracket; means for rigidly securing the bracket to a stationary member of the machine; and means whereby the device is connected to the bracket with capacity for limited play to compensate for flexure of the shaft of the machine or apparatus, and to serve as the sole means for rotatively sustaining the aforesaid end of the latter shaft.

"6. The invention according to claim 1, wherein the connecting means comprises a spherical projection at one side of the casing of the device constituting the bearing for the output shaft and fitting a spherical socket opening in the bracket."

It is apparent that Williams' claim 6 is broader than the counts, but the board found that the additional limitations defined by the counts were of no patentable significance.

The first limitation in claim 1 which does not appear in claim 6 of Williams is that the motor which drives the speed change mechanism forms a unit with it, which unit is supported by the spherical portion of the projection. In our opinion that distinction involves no more than a choice of obvious mechanical expedients. Whether a motor is mounted rigidly with or separately from the device or gearing which it drives is a matter of choice well within the province of a skilled mechanic. The problem of affording universal support for the speed change unit is substantially the same whether or not the motor is supported with it.

The counts refer to the member which supports the spherical projection as "a base member adapted to be secured to a foundation," while Williams' claim 6 refers to it as "a supporting bracket." Those expressions are substantially equivalent, since "base" means a supporting member, broadly, and a bracket is a conventional form of supporting member.

The counts further state that the spherical portion of the support element is "coaxial" with the longitudinal axis of the power takeoff, while Williams' claim 6 does not include such a limitation. We agree with the board, however, that that distinction has no inventive significance. The exact location of the axis of the power takeoff with respect to the support is a matter of design and convenience and it would be an obvious expedient to make the two coaxial.

Count 1 states that the driven shaft is journalled in the support element, which, in the light of Rieser's disclosure, means that the power takeoff, which surrounds the driven shaft, has a bearing in the support element. Claim 6 of the Williams' application states that the "spherical projection," which corresponds to the support element of the counts, constitutes the bearing for the output shaft (power takeoff). In our opinion, count 1 and Williams' claim 6 are fully equivalent in that respect.

Counts 1 and 3 also state that the universal adjustment of the support com-

pensates for "parallel and angular mounting misalignment" between the base and the axis of the takeoff. We agree with the board that the spherical supporting means recited in Williams' claim 6 would inherently provide for such adjustment. The counts do not specify that the base member is horizontal.

For the reasons given, we conclude that the differences between the counts and claim 6 of Williams involve mechanical expedients only and that the essential patentable subject matter is the same in each case. The fact that claim 6 was allowed by the examiner, notwithstanding the fact that it does not include the limitations above discussed, affords an indication that those limitations were not necessary to the allowance of the interference counts. It follows that Williams was claiming substantially the invention here in issue within one year of the issuance of Rieser's patent and accordingly is not estopped to contest priority of that invention.

 The decision in Andrews v. Wickenden, 194 F.2d 729, 39 C.C.P.A., Patents, 860, relied on by Rieser, is not controlling here, since in that case, as properly pointed out in In re Tanke, 213 F.2d 551, 41 C.C.P.A., Patents, 919, the patent claim copied by the applicant contained a critical limitation which was not present in the claims relied on by him as being drawn to the same invention. The rule that every limitation of an interference count must be considered material, which rule is applied in determining the right to make the count and priority of invention, is not controlling on the question of estoppel under 35 U.S.C. § 135. In the latter situation, the question as to the materiality of limitations is to be considered on its merits, and limitations found to be immaterial may be disregarded. In re Tanke, supra; Emerson v. Beach, 215 F.2d 290, 42 C.C.P.A., Patents, 711; Chapman v. Beede, 54 App. D.C. 209, 296 F. 956; Jenks v. Knight, 90 F.2d 654, 24 C.C.P.A., Patents, 1227.

 The determination as to whether the counts are supported by the disclosure of the Williams' application involves a consideration of the same limitations that have been discussed above, but from a different viewpoint. Here each limitation must be regarded as material, and they are to be compared with the disclosure of the application rather than with what was claimed in it before the counts were copied from the Rieser patent.

While Williams does not illustrate a device in which the driving motor is supported as a unit with the speed change mechanism, he states in the introductory portion of his specification that his invention relates to devices which are "powered either by a pulley belt from an external power source, or by a motor incorporated in the unit." The manner in which such a motor could be incorporated is obvious and we consider the quoted language to be a sufficient disclosure of the unitary mounting called for by the counts.

As above indicated, we are of the opinion that the term "base" as used in the counts, is sufficiently broad to include the supporting bracket of Williams, and we do not find that the references in counts 1 and 3 to compensation for "parallel and angular" misalignment between the base and the axis of the power takeoff defines anything not disclosed by Williams. Rieser argues that since the takeoff is horizontal, the base must also be horizontal or there can be no question of parallel misalignment between the two. However, while Rieser's base member includes a horizontal pad portion, that portion is considerably shorter than the vertical part of the member; and, accordingly, the base as a whole would not be properly described as a horizontal member.

It follows that the reference in the counts to parallel misalignment between the takeoff and base can refer only to misalignment between the takeoff and the horizontal portion of the base. While the bracket of Williams, which includes the spherically curved concavity, is primarily a vertical member, it has, of course, some horizontal extent, although its width in the horizontal direction is

not as great as that of Rieser's horizontal pad. So far as the structure recited by the counts is concerned, it is immaterial what the horizontal extent of the base member is. The essential feature is that compensation be made for deviation of the takeoff from a horizontal direction. That result is effected by the Williams' device, and in our opinion that device satisfies both the letter and the spirit of the counts as to compensation for misalignment.

It is not stated in the Williams' application that the power takeoff is coaxial with the spherically curved support element, as required by the counts, but we agree with the finding of the board that such a relationship is clearly suggested by the drawing.

As regards the limitation in count 1, that the driven shaft is "journalled in said support," it is to be noted that that shaft in the Rieser device is not journalled directly in the support, but lies within the power takeoff which is journalled in the support. Williams shows a similar arrangement and his original claim 6 states that the spherical projection, which forms the support called for by count 1, constitutes the bearing for the output shaft (power takeoff). While Williams does not appear to show ball bearings at the point specified, we agree with the board that the term "journalled" does not require such bearings, and that Williams' disclosure fairly satisfies the requirement of count 1 as to journalling. Rieser argues that Williams' statement that the support constitutes the bearing for the output shaft does not mean that the shaft has a bearing in the support. In our opinion, however, those expressions are synonymous. If the support constitutes a bearing for the shaft, there must be a contact between the two which permits the shaft to rotate; and with such a contact, the shaft would be journalled in the support.

Counts 2 and 3 state that there is a bearing support for the power takeoff shaft "in said speed change device." Since the spherical support member is a part of the speed change device, these counts are suported by the Williams' disclosure in the same manner as count 1. Moreover, the power takeoff shaft of Williams would normally have an additional bearing within the casing of the speed change device.

Rieser contends that Williams' testimony indicates that he did not consider certain features of the counts to be important and did not intend to disclose or claim them. However, the issue here is not what Williams intended to do, but what he actually did. Assuming, without deciding, that evidence as to intent might be material if the meaning of the disclosure or claims were uncertain, such evidence cannot be accepted to alter such meaning where as here it is clear. In the instant case we find the Williams' disclosure and original claim 6 to be free from ambiguity, and his testimony as to intent is, therefore, not material.

We have given careful consideration to all the points raised and arguments advanced by Rieser in support of his contentions that Williams is estopped to contest the interference involved in this appeal and that his application disclosure does not support the counts. Furthermore, we have given full weight to the principle that an applicant who copies a patent claim has the burden of showing a clear basis for the claim in his disclosure. However, for the reasons stated herein and in the decision of the Board of Patent Interferences, with which we are in agreement, we conclude that Williams is not estopped, and that the counts find proper support in the disclosure of his application.

It is conceded in Rieser's brief that Williams' application was completed on September 29, 1950; and that concession is justified by the record. Accordingly, Williams' date of entry into the field was at least as early as September 29, 1950, since, as held above, his application discloses the invention here in issue. Rieser alleges no actual reduction to practice and is accordingly restricted to the constructive reduction to practice resulting from the filing of his application on March 30, 1951. He was there-

fore the last to reduce to practice, since Williams is entitled to a constructive reduction to practice as of the filing date of his application, October 19, 1950. It follows that Rieser cannot prevail here unless he has shown that he was first to conceive and that he exercised reasonable diligence during the critical period from a time just prior to September 29, 1950, until March 30, 1951, when his application was filed.

Rieser appears to have conceived the invention here involved at least as early as 1949, and to have written to an attorney, one Robert G. Pierce, on October 12, 1950, with a view to having a patent application prepared. He was unsuccessful, apparently through no fault of his own, in having Pierce prepare the application, and eventually prepared and filed it himself. However, assuming that he was diligent after October 12, 1950, it was still incumbent on him to show that he was active at and just prior to September 29, 1950

▆ The only evidence of any activity prior to that date by Rieser in connection with the filing of his application consists in his testimony as follows:

"Q. 182. About when did you prepare the patent drawings that you sent in October to Mr. Pierce? A. I would say they were prepared some time perhaps in August or September 1950."

That testimony, apparently based on recollection alone, was given in June, 1955, almost five years after the event to which the testimony relates, and is wholly uncorroborated. The lack of corroboration alone would be fatal to Rieser's case, since diligence, as well as conception and reduction to practice, cannot be established by the uncorroborated testimony of the inventor, Kendall v. Searles, 173 F.2d 986, 36 C.C.P.A., Pat-

ents, 1045. Moreover, we agree with the findings of the board that Rieser's testimony, even aside from the question of corroboration, would not establish activity by him at any particular time in August or September of 1950, and that accordingly it would not show that he was doing anything toward preparing or filing his application during a period of a month or more immediately preceding Williams' entry into the field.

A situation closely paralleling the instant one was presented in Brown v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889. In that case it was held that a party was not diligent where there was no showing of activity between August 22, 1932, and October 18, 1932, his opponent having entered the field on September 24, 1932. Similarly, in Scharmann v. Kassel, 179 F.2d 991, 37 C.C.P.A., Patents, 903, it was held that a party had not shown the requisite diligence where his last activity prior to his opponent's filing date of February 15, 1950, took place on January 19, 1950; and in Fearon v. Krasnow, 172 F.2d 233, 36 C.C.P.A., Patents, 785, where it was held that the appellant having established diligence from November 8, 1939 to his filing date, December 27, 1939, was nevertheless unsuccessful in the interference because there was no evidence of activity on his part immediately prior to appellee's filing date, October 24, 1939.

▆ In view of the cited decisions, it would be necessary to hold that Rieser has not established diligence immediately prior to the entry of Williams into the field, even if his testimony, that he prepared drawings at some unspecified time during August or September 1950, were properly corroborated.

The decision of the Board of Patent Interference for the reasons hereinbefore stated is affirmed.

Affirmed.