**Phillip W. BERMAN, Timothy J. Gregory, Laurence A. Lasky, Gerald R. Nakamura, Eric J. Patzer, John S. Patton, and Ellen S. Vitetta, Appellants,**

v.

**Gerard M. HOUSEY, Appellee.**

No. 01–1311.

United States Court of Appeals, Federal Circuit.

May 29, 2002.

---

8. It is worth noting that Mr. Conti's taking claim fails for an additional reason. Mr. Conti's ability to use his vessel and gear to catch swordfish using drift gillnets in the Atlantic Swordfish Fishery was dependent upon a permit that was revocable at all times and that, as we have seen, did not constitute a property right for purposes of the Fifth Amendment. In *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 217 (Fed.Cir.1993), we rejected the claim that the Bureau of Alcohol, Tobacco, and Firearms' decision to revoke a permit allowing the importation and sale of certain firearms constituted a taking of the claimant's right to use the permit for those purposes. We stated: "Mitchell's ability to import the rifles and sell them in the United States was at all times entirely subject to the exercise of ATF's regulatory power. Consequently, any expectation which arose on Mitchell's part as a result of the import permits did not constitute a property right protected by the Fifth Amendment." *Id.* at 217. Likewise, the drift gillnet regulation at issue here has banned a particular use of Mr. Conti's vessel and gear "which was not inherent in its ownership" and was "totally dependent upon the ... permit issued by" the government. *Id.*

R. Danny Huntington, Burns, Doane, Swecker & Mathis, L.L.P., of Alexandria, VA, argued for appellants. With him on the brief were Donna M. Meuth, and Bruce Wieder.

Steven J. Lee, Kenyon & Kenyon, of New York, NY, argued for appellee. With him on the brief was Kenneth R. Corsello.

John M. Whealan, Solicitor, Office of the Director, United States Patent and Trademark Office, of Arlington, VA, for amicus curiae The Director of the United States Patent and Trademark Office. With him on the brief were Mark Nagumo, and Linda Moncys Isacson, Associate Solicitors.

Before LOURIE, BRYSON, and GAJARSA, Circuit Judges.

LOURIE, Circuit Judge.

Phillip W. Berman, Timothy J. Gregory, Laurence A. Lasky, Gerald R. Nakamura, Eric J. Patzer, John S. Patton, and Ellen S. Vitetta (collectively, "Berman") appeal from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences entering judgment in favor of Gerard M. Housey and dismissing Berman's unpatentability motion as moot. *Berman v. Housey*, Inter. No. 104,347, slip op. at 17 (Bd. Pat. App. & Inter. Dec. 21, 2000) ("*Berman II*"). Because the Board did not err in refusing to consider Berman's unpatentability motion and in entering judgment in favor of Housey, we affirm.

## BACKGROUND

Berman's U.S. Patent Application 08/953,550 is directed to, *inter alia*, a method of determining whether a substance inhibits the binding of T4 receptors to the T cell binding domain of gp120. *Id.* at 2. That application was accorded the benefit of the February 20, 1987, filing date of one of Berman's earlier copending applications. On October 17, 1997, Berman filed a preliminary amendment canceling all the claims in the '550 application and introducing new independent claim 64 and dependent claims 65 and 66. *Id.* Berman also requested that an interference be declared with one of Housey's pending applications, which later issued on November 18, 1997, as U.S. Patent 5,688,655 ("Housey III"). *Id.*

The examiner rejected claims 64–66 on various grounds, and Berman responded by canceling claims 65 and 66 and amending claim 64. *Id.* Amended claim 64, presently the sole remaining claim in the '550 application, reads as follows:

> 64. A method of identifying an anti-gp120 monoclonal antibody that is an inhibitor of the binding of T4 receptor to the T cell binding (TCB) domain of gp120 by blocking or binding said TCB domain, which method comprises:
>
> (a) providing a CHO cell which has been transformed to produce T4 receptor relative to a control CHO cell which does not produce T4 receptor, and wherein production of T4 receptor enhances the ability to bind to the TCB domain of gp120 in the transformed cell, which ability is greater in said transformed cell than in said control cell,
>
> (b) treating said transformed cell with an anti-gp120 monoclonal antibody and gp120, and
>
> (c) examining the treated transformed cell to determine whether inhibition of the binding of T4 receptor to the TCB domain of gp120 has occurred in response to said anti-gp120 monoclonal antibody of (b).

The examiner found claim 64, as amended, to be patentable, and was of the opinion that it interfered with the claims of Housey III as well as the claims of two other Housey patents: U.S Patent 4,980,281 ("Housey I"), issued on December 25, 1990, and U.S. Patent 5,266,464 ("Housey II"), issued on November 30, 1993. *Id.* at

3. After the examiner forwarded Berman's application to the Board, the present interference was declared between claim 64 of the '550 application and claims 1 and 22 of Housey I, claims 1 and 5 of Housey II, and claim 1 of Housey III. *Id.* Claim 1 of Housey I is representative of the claims in Housey I involved in this appeal, and it reads as follows:

1. A method of determining whether a substance is an inhibitor or activator of a protein whose production by a cell evokes a responsive change in a phenotypic characteristic other than the level of said protein in said cell per se, which comprises:

(a) providing a first cell line which produces said protein and exhibits said phenotypic response to the protein;

(b) providing a second cell line which produces the protein at a lower level than the first cell line, or does not produce the protein at all, and which exhibits said phenotypic response to the protein to a lesser degree or not at all;

(c) incubating the substance with the first and second cell lines; and

(d) comparing the phenotypic response of the first cell line to the substance with the phenotypic response of the second cell line to the substance.

Housey I, col. 24, ll. 46–63. The claims of Housey II involved here are identical to those in Housey I, except that they require the use of CHO cell lines. Housey II, col. 31, l. 32 to col. 32, l. 6. Claim 1 of Housey III is also similar to the claims in Housey I, except that the screening method claimed therein utilizes a control cell, which obviates the need to use two separate cell lines to determine whether a particular substance acts to inhibit or activate cell proteins that cause a phenotypic change in the cell being analyzed. That claim reads as follows:

1. A method of determining whether a substance is an inhibitor or an activator of a protein, which comprises:

(a) providing a test cell which overproduces a selected protein relative to a control cell which produces said protein at a lower level or essentially does not produce the protein, and wherein production of said protein in said test cell evokes a responsive change in a phenotypic characteristic, other than the level of said protein in said cell, per se, which is comparatively greater than in said control cell,

(b) treating said test cell containing the overproduced selected protein with said substance, and

(c) examining the treated test cell to determine whether it exhibits a change in said phenotypic characteristic in response to said substance.

Housey III, col. 29, ll. 27–41.

The Board set July 23, 1999, as the expiration date for the filing of any preliminary motions. *Berman v. Housey,* Inter. No. 104,347, slip op. at 2 (Bd. Pat.App. & Inter. Apr. 7, 1999). On April 19, 1999, Housey filed a preliminary motion under 37 C.F.R. § 1.633(a), which the Board agreed to hear on an expedited basis, asserting that claim 64 of the '550 application was barred under 35 U.S.C. § 135(b) because that claim was not made within one year of the issuance of Housey I and Housey II. *Berman II* at 3. Berman filed an opposition to that motion, arguing that original claim 27, filed on February 20, 1987, was directed to substantially the same subject matter as Housey's involved claims, and thus that the bar of § 135(b) was inapplicable. *Id.* at 3–4. Claim 27, which is directed to a particular type of antibody rather than a screening method as in the claims set forth above, reads as follows:

27. An antibody which has the TCB domain binding characteristics of monoclonal antibody 5C2E5 (ATCC _____).

On July 1, 1999, before the Board had rendered a decision on Housey's preliminary motion, Berman filed a separate preliminary motion asserting that all of Housey's claims at issue in the interference were unpatentable in view of the prior art, and included twenty-eight exhibits in support of that motion. *Berman v. Housey*, Inter. No. 104,347, slip op. at 1 (Bd. Pat. App. & Inter. July 12, 1999). The following day, the Board issued an order suspending the original schedule for the filing of preliminary motions, and on July 12, 1999, the Board returned Berman's unpatentability motion unconsidered, stating that Berman failed to comply with prescribed procedures by filing exhibits before the conclusion of the preliminary motion period. *Id.* at 2. The Board noted, however, that the return of that motion was without prejudice to Berman's refiling the motion in the appropriate manner once the ban on filing further preliminary motions was lifted. *Id.*

Several months thereafter, an Interference Trial Section Motions Panel granted Housey's preliminary motion, concluding that Berman's claim 64 was barred under § 135(b). *Berman v. Housey*, Inter. No. 104,347, slip op. at 2–3 (Bd. Pat.App. & Inter. Nov. 10, 1999) (*"Berman I "*). As a preliminary matter, the Board found that because Berman did not contest that claim 64 was directed to "the same or substantially the same subject matter" as the claims of Housey I and II, and because that claim was made more than one year after the issuance of those patents, claim 64 appeared to be barred under § 135(b). *Id.* at 5. The Board further determined that because Berman's original claim 27 was not directed to the same or substantially the same subject matter as the relevant claims in Housey I and II, that claim

did not provide a basis for Berman to relate back to his original filing date in order to avoid the bar of § 135(b). *Id.* at 12. In making that determination, the Board rejected Berman's contention that "the decision whether a party was claiming 'the same or substantially the same subject matter' ... is governed by the obviousness standard of 35 U.S.C. § 103," which is the standard that also governs whether an application claims the "same patentable invention" for purposes of establishing an interference under 35 U.S.C. § 135(a) and 37 C.F.R. § 1.601(n). *Id.* at 8. Instead, the Board determined that claim 27 did not enable Berman to avoid the § 135(b) bar under the test set forth by decisions of our predecessor court, including *Rieser v. Williams*, 45 C.C.P.A. 953, 255 F.2d 419, 422, 118 USPQ 96, 99 (CCPA 1958) (defining the "same or substantially the same subject matter" test under § 135(b) as whether "the essential patentable subject matter is the same" in both the issued patent claim and the application claim that is the subject of the § 135(b) inquiry). *Id.* at 12, 255 F.2d 419.

The Board, however, provided Berman with the opportunity to file a preliminary motion under 37 C.F.R. §§ 1.633(i), 1.633(c)(2), and 1.637(c)(2) to redefine the interference by adding a claim that interfered with one of the claims in Housey I or II and was not barred under § 135(b). *Berman v. Housey*, Inter. No. 104,347, slip op. at 2 (Bd. Pat.App. & Inter. Nov. 10, 1999). As a result, Berman filed another preliminary motion seeking to add proposed claim 67 to the '550 application, which is identical in language to Berman's original claim 27. *Berman II* at 4. Berman also moved to have that claim designated as corresponding to the count under 37 C.F.R. §§ 1.601(n) and 1.637, and filed a number of prior art references and a declaration in support of that motion. *Id.*

The Board held that Berman's preliminary motion failed to show, *prima facie,* that proposed claim 67 is the "same patentable invention" as the count within the meaning of § 1.601(n). *Id.* at 6, 255 F.2d 419. The Board first determined that Berman failed to follow the procedures set forth in §§ 1.601(n) and 1.637(c)(2)(ii), which require that the count, rather than the claims at issue, be assumed to be the prior art for purposes of the directionality of the § 1.601(n) test. *Id.* at 7, 255 F.2d 419. Nevertheless, the Board then went on to analyze Berman's motion under what it viewed to be an improper directionality analysis and denied Berman's motion under that standard because it determined that Berman failed to establish that any of the relevant claims in Housey I and II would have been obvious over that claim. *Id.* at 16, 255 F.2d 419. Specifically, the Board determined that Berman failed to establish that a person of ordinary skill in the art would have been motivated to combine the cited prior art references with the antibody in proposed claim 67 to yield any of the screening methods claimed in Housey I and II. *Id.* As a result of its holding that claim 67 did not correspond to the count, the Board entered judgment in favor of Housey because, as claim 64, the only pending claim in the '550 application, was found to be unpatentable under § 135(b), there existed no interference-in-fact between that claim and any of the claims in the Housey patents and thus "[c]ontinuation of this interference under the circumstances of this case would be contrary to the purpose of § 135(b) to act as a statute of repose." *Id.* at 17, 255 F.2d 419. Finally, the Board also dismissed Berman's pending unpatentability motion as moot because it determined that, even if it had been properly filed in the first instance, to consider that motion "would convert this interference into a naked cancellation proceeding." *Id.* at 17 n. 7, 255 F.2d 419.

Berman appeals from the Board's final decision entering judgment in favor of Housey because of the lack of an interference-in-fact and dismissing his unpatentability motion as moot. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4).

## DISCUSSION

We review the Board's interpretation of 35 U.S.C. § 135(b) *de novo. In re McGrew,* 120 F.3d 1236, 1237, 43 USPQ2d 1632, 1634 (Fed.Cir.1997). The Board's factual findings are reviewed for substantial evidence. *In re Roemer,* 258 F.3d 1303, 1307, 59 USPQ2d 1527, 1529 (Fed. Cir.2001).

Berman makes two primary arguments on appeal. First, Berman argues that the Board erred by refusing to address its unpatentability motion. Berman contends that this court has held that all issues that are fairly raised in an interference proceeding must be decided by the Board, regardless whether the moving party's claims are found to be unpatentable. Berman argues that 35 U.S.C. § 6 supports this conclusion, as it provides that the Board "*shall* determine priority and *patentability* of invention in interferences declared under section 135(a)." 35 U.S.C. § 6(b) (Supp. V 1999) (emphases added). Berman thus contends that the Board abused its discretion by considering only Housey's preliminary motion because the Board's arbitrary decision as to which motion to address first dictated the outcome of the interference. Berman's second argument is that, regardless of its first argument, the Board erred by terminating the interference under § 135(b), and thus its decision must be vacated and remanded for a determination on the merits. Berman alleges that under the Board's narrow interpretation of § 135(b) in *Berman I,* claim 64 is not directed to the "same or substantially the same subject matter" as

the claims in Housey I and II and thus is not barred by that provision. Berman also argues that even if claim 64 is directed to the same or substantially the same subject matter as the claims of Housey I and II, because that claim was made within one year of the issuance of Housey III, it is entitled to separately trigger an interference with that patent.

In response to Berman's first argument, Housey contends that although several decisions of this court *allowed* the Board to decide patentability questions that were fairly raised and for which there was adduced an adequate record, this court has never *compelled* the Board to decide such questions. Housey further argues that Congress enacted 35 U.S.C. § 6 only to enable the new Board to decide patentability questions, and thus does not require it to do so. Regarding Berman's second argument, Housey responds that although the Board properly granted his preliminary motion to have claim 64 barred under § 135(b), the Board's narrow interpretation of that provision renders it a flawed statute of limitations because it would bar some untimely interferences, but not others. Housey maintains that, under the proper interpretation of § 135, the interference was properly terminated either because claim 64 does not interfere with any of the patent claims at issue under § 135(a), or because that claim is barred under § 135(b). Finally, Housey argues that the phrase "an issued patent" in § 135(b) means that *any* issued patent may be used to reject a claim, and thus that either Housey I or Housey II provides a basis to invalidate claim 64 independent of the date that Housey III was issued.

A. *Refusal to Consider Berman's Unpatentability Motion*

■ We conclude that the Board did not err by refusing to consider Berman's unpatentability motion on the ground that

Berman's sole remaining claim in the interference was barred under § 135(b). Section 135(b)(1) provides that "[a] claim which is the same as, or for the same or substantially the same subject matter as, a claim of an issued patent may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted." 35 U.S.C. § 135(b)(1) (Supp. V 1999). Both the plain language of that provision and the relevant legislative history make clear that it was intended to be a statute of repose, limiting the time during which an interference may be declared "so that the patentee might be more secure in his property right." *Corbett v. Chisholm*, 568 F.2d 759, 765, 196 USPQ 337, 342 (CCPA 1977) (citing H.R.Rep. No. 970, at 1 (1939) ("The purpose of this bill is to curtail the time within which an interference with an issued patent may be instituted.")). The absence of an interfering claim that is not barred under § 135(b) therefore renders an interference nonexistent, and thus deprives the Board of its authority to continue the proceeding. *See, e.g., Parks v. Fine*, 773 F.2d 1577, 1581, 227 USPQ 432, 435 (Fed.Cir. 1985) (vacating the Board's award of priority because Fine's claims were barred under § 135(b), and concluding that "[t]he interference being dissolved, there is no occasion to award priority to either party"). Accordingly, we hold that § 135(b) is a threshold issue that should be addressed by the Board at the preliminary stage of an interference before proceeding to the merits, and that the Board in this case properly refused to consider Berman's unpatentability motion once it determined that Berman's claim 64 was barred under § 135(b).

■ Berman nevertheless argues that the Board's decision to consider Housey's preliminary motion before Berman's was "arbitrary" in that the decision had the

effect of determining the outcome of the interference. We disagree. Housey's motion involved Berman's right to contest that he had priority of invention over the subject of the count, and thus, as discussed above, implicated the Board's authority to conduct the interference. Berman's motion, on the other hand, involved a "mere" patentability issue. As discussed above, a determination that the claims involved in an interference are not barred by § 135(b) is a condition precedent to the declaration of an interference that should be resolved before issues of priority and patentability are addressed, and thus when the board is presented with both a preliminary motion involving a § 135(b) issue and a preliminary motion involving a garden-variety patentability issue, it should first address the former. Of course, 37 C.F.R. § 1.640(b) provides in relevant part that "[a]n administrative patent judge *may take up motions for decisions in any order,* may grant, deny, or dismiss any motion, and may take such other action which will secure the just, speedy, and inexpensive determination of the interference." 37 C.F.R. § 1.640(b) (2001) (emphasis added). This is a sound rule that ought to apply under ordinary circumstances, such as when motions of an equal stature are presented. However, because § 135(b) is a threshold issue in an interference, the discretion normally afforded the Board under § 1.640(b) should be tempered by the importance of addressing that issue at a preliminary stage of an interference, as the Board did in this case. The Board's decision to address Housey's § 135(b) motion before Berman's unpatentability motion was therefore not only not arbitrary, but was correct.

The cases cited by Berman in his brief, including *Perkins v. Kwon,* 886 F.2d 325, 12 USPQ2d 1308 (Fed.Cir.1989); *Guinn v. Kopf,* 96 F.3d 1419, 40 USPQ2d 1157 (Fed. Cir.1996); *Wu v. Wang,* 129 F.3d 1237, 44 USPQ2d 1641 (Fed.Cir.1997); *Schulze v.*

*Green,* 136 F.3d 786, 45 USPQ2d 1770 (Fed.Cir.1998); and *In re Gartside,* 203 F.3d 1305, 53 USPQ2d 1769 (Fed.Cir. 2000), are not to the contrary. Those cases, contrary to Berman's argument, do not hold that *all* issues relating to patentability that are fairly raised in an interference *must* be addressed by the Board. Rather, those cases stand for the proposition that if, in a properly declared interference, an issue of priority or patentability is fairly raised and fully developed on the record, then the Board has the *authority* to consider that issue even after the Board determines that one party was not entitled to its claims.

*Perkins* involved a situation in which the Board held that neither party to an interference was entitled to a patent. 886 F.2d at 325, 12 USPQ2d at 1309. The Board found that Kwon, the junior party, was the prior inventor and thus cancelled the claims of Perkins, the senior party. *Id.* However, the Board also determined that the count was unpatentable to Kwon because of an on-sale bar under 35 U.S.C. § 102(b). *Id.* On appeal, Perkins challenged the Board's authority to decide the question of priority of invention when it determined that Kwon's claims were unpatentable. *Id.* at 325–26, 886 F.2d 325, 12 USPQ2d at 1309. We concluded that the Board had the authority to decide the priority question because the "decision by the Board of all issues that are fully and fairly raised during the interference proceeding, whether related to patentability or priority, is in full accord with Congressional intent that PTO procedures be simplified as well as improved." *Id.* at 328, 886 F.2d 325, 12 USPQ2d at 1310. *Perkins* therefore held only that the Board had the authority to decide the priority issue even after it determined that Kwon's interfering claims were unpatentable, and thus was not presented with the question whether the Board is compelled to address all fairly

raised issues of priority and patentability in every instance.

Berman, however, cites the following language in that opinion in support of its argument that *Perkins* mandates that the Board decide all issues of priority or patentability that are fairly raised:

> The Commissioner also states that although the Board is authorized to decide the issues of both priority and patentability under the circumstances such as those in this case, it is discretionary with the Board as to whether it will resolve questions of patentability that arise during an interference proceeding.... The legislative history [of § 135(a)], however, shows that Congress intended that if patentability is fairly placed at issue in the proceeding, it will be determined.... The Board, by resolving both priority and patentability when these questions are fully presented, settles not only the rights between the parties but also the rights of concern to the public.

*Id.* at 328–329, 12 USPQ2d at 1311. That language, which concerned the interpretation of the phrase "shall determine questions of priority and *may* determine questions of *patentability*" in 35 U.S.C. § 135(a) (Supp. V 1999) (emphases added), does not control our resolution of the present appeal. *Perkins* did not involve a situation, as here, in which the Board terminated an interference that was mistakenly declared because it initially overlooked the applicability of § 135(b). Because the Board should terminate an interference once it determines that there is a § 135(b) bar, the Board acts in accordance with § 135 when it refuses to address other issues of priority or patentability raised in that interference.

Furthermore, the issues presented in the remaining cases cited by Berman, *Guinn, Wu, Schulze,* and *Gartside,* did not concern whether the Board is compelled to decide certain issues of patentability, and did not involve a § 135(b) bar. Rather, those cases merely applied the holding of *Perkins* to facts not presented here. *See Guinn,* 96 F.3d at 1421–22, 40 USPQ2d at 1159 (holding that a party's filing of a statutory disclaimer of all interfering claims does not divest the Board of jurisdiction to enter judgment against that party); *Wu,* 129 F.3d at 1242, 44 USPQ2d at 1645 (determining that the Board did not exceed its authority when it declined to dissolve the interference once the patentability of the opposing party's claims was no longer at issue); *Schulze,* 136 F.3d at 791–92, 45 USPQ2d at 1774 (concluding that the Board could continue an interference and address an issue of patentability even though it was clear that one of the parties would lose on priority); *Gartside,* 203 F.3d at 1317, 53 USPQ2d at 1777 (determining that a party's withdrawal from an interference did not divest the Board of jurisdiction to decide questions of patentability that were fairly raised and fully developed during the proceeding).

Berman's final argument in support of its contention that the Board must address its unpatentability motion is that 35 U.S.C. § 6, which provides in relevant part that "[t]he Board of Patent Appeals and Interferences ... *shall* determine priority and *patentability* of invention," 35 U.S.C. § 6(b) (emphases added), requires the Board to do so. That provision, however, does not require the Board to do anything. Aside from the internal conflict that Berman's interpretation would create with the language of § 135(a), which states in relevant part that "[t]he Board of Patent Appeals and Interferences shall determine questions of priority and *may* determine questions of patentability," *id.* § 135(a) (emphasis added), the legislative history of §§ 6 and 135(a) makes clear that those provisions address only what issues the Board is empowered to consider, and thus

does not establish any affirmative obligations that it must perform. Section 6 is an enabling provision. The legislative history of the Patent Law Amendments of 1984, Pub.L. No. 98–622, 98 Stat. 3383 (codified as amended in scattered sections of 35 U.S.C.), which, among other things, accomplished the merger of the old Board of Appeals with the former Board of Interferences, states that §§ 6 and 135(a) were amended in 1984 "to *permit* the Board of Patent Appeals and Interferences to consider all patentability issues on [sic] interferences." 130 Cong. Rec. H10525, H10528 (1984), *reprinted in* 1984 U.S.C.C.A.N. 5827, 5836 (emphasis added). The use of the word "permit," as opposed to terms such as "compel," "require," or the like, strongly suggests that Congress was not placing any affirmative obligations on the Board, but rather setting forth the scope of its authority in interferences. Section 6 therefore does not require the result sought by Berman.

Finally, the Board's refusal to address issues of priority and patentability once it determined that there was no interference-in-fact is supported by sound policy considerations. In a recent decision, the Board in *Gluckman v. Lewis* stated that:

> Where the lack of an interference is apparent early in the proceedings, prudence will ordinarily counsel a schedule that focuses on the allegation of no interference-in-fact before the other issues for at least two reasons. First, just administration counsels that quasi-jurisdictional issues be resolved before a party's claims are placed in jeopardy. Otherwise, there might be an incentive for a party to engineer a thin pretext for an interference, knowing that the pretext will fail under scrutiny, simply to obtain an inter partes opposition or a more liberal inter partes reexamination, or for other reasons unrelated to the Board's mission under § 135(a).... Second, inexpensive administration counsels early

resolution of quasi-jurisdictional issues before the parties have expended resources briefing issues that should never have been raised given the lack of an underlying interference. Where it is possible to identify and address such issues early in the proceeding, it should ordinarily be done.

59 USPQ2d 1542, 1543–44 (Bd. Pat.App. & Inter.2001) (footnotes and citations omitted). We agree with the wise observations of the Board.

We therefore conclude that the Board did not err by refusing to consider Berman's unpatentability motion.

### B. *Termination of the Interference Under § 135(b)*

■ We also conclude that the Board did not err by terminating the interference under § 135(b). As for Berman's contention that claim 64 is not barred under the Board's interpretation of the "same or substantially the same subject matter" test of § 135(b), we find that Berman waived that argument on appeal. The Board in *Berman I* stated that "[n]either Housey nor Berman asserts, for the purpose of this motion, that Berman Claim 64 is not directed to the same or substantially the same subject matter as claimed [in Housey I and II]." *Berman I* at 5. That finding is supported by the record on appeal. Specifically, Housey alleged in his § 135(b) preliminary motion that claim 64 is barred under that provision because, *inter alia,* that claim is directed to the "same or substantially the same subject matter" as the claims in Housey I and II. In its opposition to that motion, Berman responded:

> Housey attempts to hide its lack of evidence by arguing that *because A (claim 64) is the same patentable invention as B (the claims of the Housey patents),* and because C (all of the Berman claims pending prior to the one-year anniversa-

ry of the issuance of [Housey I]) is not the same as A, B and C cannot be directed to the same patentable invention. However ... the mere fact that claim 64 may be different than any of the pertinent Berman claims [*e.g.*, original claim 27, which was the only claim that Berman argued at the Board satisfied § 135(b)] does not prove that the pertinent Berman claims are a different invention than any of the ... claims [in Housey I or II].

(Emphasis added.) Berman thus never disputed Housey's assertion that claim 64 was directed to "the same or substantially the same subject matter" as the claims in Housey I and II, but rather argued only that the "pertinent Berman claims," *e.g.*, Berman's original claim 27, are directed to the same or substantially the same subject matter as those claims in its attempt to avoid the bar of § 135(b).* Accordingly, because Berman never argued at the Board that claim 64 is not directed to the same or substantially the same subject matter as the relevant claims in Housey I and II, and because Berman has not demonstrated that special circumstances exist in this case that militate against a finding of waiver, it cannot now be heard to make that argument for the first time on appeal. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426, 44 USPQ2d 1103, 1108 (Fed.Cir.1997) (stating that, barring a few exceptions, the failure to raise an argument at the trial level constitutes a waiver of that argument on appeal).

■ We also reject Berman's argument that even if claim 64 is directed to the same or substantially the same subject matter as the claims of Housey I and II, it is entitled to have a separate interference declared with Housey III. The plain language of § 135(b)(1) rejects such a contention, as it states that "[a] claim which is the same as, or for the same or substantially the same subject matter as, a claim of *an issued patent* may not be made in any application unless such a claim is made prior to one year from the date on which the patent was granted." 35 U.S.C. § 135(b)(1) (emphasis added). It is readily apparent that Congress placed no qualification on the phrase "an issued patent," and thus it follows that that phrase refers to *any* issued patent, not just the latest patent to have issued with claims directed to "the same or substantially the same subject matter" as the claim subject to a potential § 135(b) bar. The claims of Housey I and II therefore constitute a proper basis for barring claim 64 under § 135(b), and the subsequent issuance of Housey III cannot revive claim 64 once it lost its right to patentability vis-à-vis Housey I and II. Because Berman was on notice in both 1990 and 1993 that he had one year to file a claim directed to the same or substantially the same subject matter as the claims of Housey I and II, respectively, and because he failed to do so, claim 64 is barred under § 135(b). As a result, Berman is not entitled to a separate interference with the claims of Housey III.

We have considered Berman's remaining arguments, and find them to be without merit.

## CONCLUSION

Because the Board did not err in terminating the interference and in refusing to consider Berman's unpatentability motion, we

*AFFIRM.*

---

* Berman's argument that original claim 27 enabled claim 64 to avoid the bar of § 135(b) was decided adversely to it by the Board, and that determination is not challenged here.