**In re Jeffrey M. SULLIVAN and Daniel Anthony Gately.**

No. 03–1278.
Interference No. 104,818.

United States Court of Appeals,
Federal Circuit.

Nonprecedential Opinion Issued:
Dec. 9, 2003.

Precedential Opinion Issued:
March 22, 2004.

Edward S. Irons, of Washington, DC, for appellants.

John M. Whealan, Solicitor, Office of the Solicitor, of Arlington, VA, for appellee. With him on the brief were Linda Moncys–Isacson and Henry G. Sawtelle, Associate Solicitors.

Before LINN, Circuit Judge, ARCHER, Senior Circuit Judge, and DYK, Circuit Judge.

LINN, Circuit Judge.

Jeffrey M. Sullivan and Daniel Anthony Gately (collectively "Sullivan") appeal from a decision by the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office, in which the Board entered judgment on priority against Sullivan. *Sullivan v. Bingel*, 2003 WL 1202245 (Bd.Pat.App & Interf.2003) ("*Final Judgment*"). Because the Board's conclusion that Sullivan's concession on priority allowed the interference to be terminated was not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law, we affirm.

## I. BACKGROUND

Sullivan was awarded United States Patent No. 6,015,916 on January 18, 2000. On August 10, 2001, Bingel copied claims 10–14 of the '916 patent in his pending patent application, Serial No. 09/508,057, to provoke an interference with that patent. On May 28, 2002, the Examiner declared an interference between the '916 patent and the '057 application. On November 20, 2002, the interference was redeclared to add Sullivan's United States Patent No. 6,455,719. *Sullivan v. Bingel*, No. 104,818, slip op. at 1 (Bd. Pat.App. & Interferences Nov. 20, 2002) ("*Notice Redeclaring Interference*"). At that time, the Board also entered an amendment to one of the copied claims in the '057 application. *Id.*, slip op. at 4. After the interference was redeclared, Sullivan filed a number of preliminary motions, in which he argued, inter alia, that the parties' claims corresponding to the interference were unpatentable as obvious in view of certain prior art references, and that the Bingel claims involved in the interference were barred by 35 U.S.C. § 135(b), because claims 10–14 of the '916 patent had been copied more than one year after the issuance of that patent.

Before the Board ruled on Sullivan's preliminary motions, however, it issued an order to Sullivan to show cause why judg-

ment on priority should not be entered against him.[1]

In response, Sullivan stated that he "acced[ed], on the facts presented, to the entry of judgment on priority only against Sullivan and in favor of Bingel." In light of this concession on priority, the Board terminated the interference. *Final Judgment*, 2003 WL 1202245, at *2. Finding that "there is little justification in continuing the interference to develop fully issues that can be administered more efficiently in an examination," the Board recommended that the Examiner consider the patentability issues raised in Sullivan's preliminary motions. *Id.* The Board also noted that Sullivan was entitled to file a protest against the '057 application under 37 C.F.R. § 1.291. *Id.* at *3.

## II. STANDARD OF REVIEW

■ This court reviews Board decisions using the standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706. *Dickinson v. Zurko*, 527 U.S. 150, 154, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). Under that statute, we set aside actions of the Board that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, and set aside factual findings that are unsupported by substantial evidence. *In re McDaniel*, 293 F.3d 1379, 1382 (Fed.Cir.2002). More specifically, we review Board decisions pursuant to the permissive rules governing patent interference proceedings for abuse of discretion. *Eli Lilly Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1266 (Fed.Cir.2003). We accept the Board's interpretation of Patent and Trademark Office regulations unless that

interpretation is "plainly erroneous or inconsistent with the regulation." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), and *Bowles v. Seminole Rock Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)).

## III. ANALYSIS

### A. Redeclaration of the Interference

■ Sullivan challenges the final decision of the Board on a number of grounds. First, he argues that this court lacks jurisdiction to review the decision because "the Board never acquired jurisdiction," allegedly because some of the claims involved in the interference were copied more than one year after the issuance of the '916 patent. Sullivan's jurisdictional argument is unpersuasive. This court has jurisdiction over appeals from decisions of the Board "with respect to ... interferences" pursuant to 28 U.S.C. § 1295(a)(4). Even if the Board's assertion of jurisdiction were improper, this court would still have jurisdiction to review the decision, make that determination, and ultimately remand the case with instructions to dismiss. *See, e.g., Mitchell v. Maurer*, 293 U.S. 237, 243–44, 55 S.Ct. 162, 79 L.Ed. 338 (1934) (holding that jurisdiction was not proper in the district court and remanding with directions to dismiss).

Sullivan argues that the Board's actions were "void ab initio" because the original declaration of the interference was allegedly unlawful. Whether or not the original interference was erroneously declared, however, the Board subsequently redec-

---

1. Here the Board sua sponte issued the show cause order prior to addressing either the patentability motion or the 135(b) motion. Thus, this case does not present the question, decided in *Berman v. Housey*, 291 F.3d 1345 (Fed.Cir.2002), of the order in which the Board should address a 135(b) motion and a

motion challenging patentability. *Id.* at 1352 ("[W]hen the board is presented with both a preliminary motion involving a 135(b) issue and a preliminary motion involving a garden-variety patentability issue, it should first address the former.").

lared the interference, in the exercise of its discretion under 35 U.S.C. § 135(a) and 37 C.F.R. § 1.640(b)(1). The Board noted that the Bingel amendment to claim 8, which it entered simultaneously with the redeclaration of the interference, "may obviate Sullivan's 35 U.S.C. § 135(b) motion." *Notice Redeclaring Interference,* slip op. at 5. This was so because Sullivan "failed to specifically explain how Bingel's amended claim 8 is the 'same or substantially the same subject matter' as claimed in Sullivan's '916 patent." *Id.* To establish that the Board lacked jurisdiction, Sullivan must demonstrate not that the original declaration was improper, but rather that the redeclaration of the interference between the amended Bingel application and the two Sullivan patents was somehow unlawful.

 Sullivan attacks the redeclaration of the interference and entry of the amendment on the grounds that he was given no notice or opportunity to be heard. The record indicates, however, that the Board notified Sullivan that an opposition to Bingel's expedited motion to amend could be filed and was due no later than November 18, 2002. Furthermore, the Board's November 20, 2002 order entering the amendment reflects that an opposition was filed by Sullivan: "Sullivan alleges that the request and entry of the Bingel amendment is improvident due to 35 U.S.C. § 135(b) and 37 C.F.R. § 1.56." *Notice Redeclaring Interference,* slip op. at 5. On this record, we cannot conclude that the Board's actions in redeclaring the interference were arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.[2]

### B. Failure to Decide Patentability

 Sullivan also argues that the Board "inappropriately sought to relegate a part of its *inter partes* jurisdictional obligations to *ex parte* determination by the examiner." In other words, because the Board had jurisdiction not only over the issue of priority but also over the patentability issues Sullivan raised in his preliminary motions, Sullivan argues that the Board was required to address patentability even after it had rendered a decision on priority. This argument has no merit. The statutory provision governing interferences draws a distinction between the two issues: "The Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability." 35 U.S.C. § 135(a) (2000). Therefore, once priority is determined in an interference, the Board has discretion to terminate the interference without more. *Berman,* 291 F.3d at 1352 (rejecting the proposition that "*all* issues relating to patentability that are fairly raised in an interference *must* be addressed by the Board"); *see also Eli Lilly,* 334 F.3d at 1267 ("This authority for the Board to determine questions of priority ... does not vitiate the Director's discretion to begin or discontinue an interference once declared."). We discern no abuse of that discretion in the Board's termination of an interference when one party concedes at an early stage that it lacks priority. Therefore, because Sullivan's concession definitively settled the priority issue, we hold that the Board's termination of the interference without further consideration of the patentability issue was not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in ac-

---

**2.** In holding that the redeclaration of interference was proper, we do not resolve the question of whether, in any further proceedings before the examiner, any of the Bingel claims should be rejected in light of section 135(b).

cordance with law. In so holding, we do not suggest that the Board would be acting beyond its discretion in first deciding a 135(b) question and in terminating the interference on that basis. *Berman,* 291 F.3d at 1352.

### C. Procedural Issues

█ Finally, Sullivan complains of two alleged procedural violations. Specifically, he argues that 37 C.F.R. § 1.610(d), which permits conferences between the administrative patent judge and the parties in an interference and allows the judge to enter appropriate orders after such conferences, is in conflict with 37 C.F.R. § 1.2, which states that "[a]ll business with the Patent and Trademark Office should be conducted in writing." However, Congress has expressly delegated to the Patent and Trademark Office authority to "establish regulations, not inconsistent with law, which . . . shall govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2) (2000). Section 1.610(d) was the product of notice-and-comment rulemaking, *see* Patent Appeal and Interference Practice, 60 Fed. Reg. 14,488 (Mar. 17, 1995), and we must accordingly give it "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We perceive no violation of due process in the procedures contemplated by Section 1.610(d) and hold that it is not arbitrary, capricious, or manifestly contrary to the statute. Accordingly, we have no hesitation in deferring to the Office's expertise in conducting its own proceedings in this case.

█ Sullivan also argues that the Board was without authority to enter a "Standing Order" governing procedure to be followed during the interference. The relevant regulation, 37 C.F.R. § 1.610, grants the administrative patent judge assigned to an interference discretion to "enter all interlocutory orders in the interference," and provides that "times for taking action by a party in the interference will be set on a case-by-case basis by the administrative patent judge assigned to the interference." 37 C.F.R. § 1.610(a), (c) (2002). We must give "controlling weight" to the Patent and Trademark Office's interpretation of this regulation unless that interpretation is "plainly erroneous or inconsistent with the regulation." *Seminole Rock,* 325 U.S. at 414, 65 S.Ct. 1215. The Standing Order sets forth guidelines relating to, inter alia, the form of papers to be filed, how conferences are to be conducted, the cross-examination of witnesses, and like matters. The Order specifically provides that "[w]hen appropriate, the terms of this STANDING ORDER may be modified by an administrative patent judge." We see no reason why administrative patent judges should have to re-invent the wheel in such procedural matters in each new interference case, particularly where the Standing Order allows them to depart from its terms when appropriate. We hold that the Board's interpretation of 37 C.F.R. § 1.610 as permitting the entry of the Standing Order in interference cases is not "plainly erroneous or inconsistent with the regulation," *Seminole Rock,* 325 U.S. at 414, 65 S.Ct. 1215, and accordingly defer to that interpretation.

### CONCLUSION

The Board's redeclaration of the interference in this case, and its decision to terminate the interference after Sullivan's early concession on priority, were not arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. Sullivan has failed to demonstrate any other

ground for reversing the Board's decision. Accordingly, that decision is

*AFFIRMED.*