# United States Court of Appeals for the Federal Circuit

---

(Serial No. 10/924,633)

## IN RE JEFF LOVIN, ROBERT ADAMS, AND DAN KURUZAR

---

2010-1499

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences.

---

Decided: July 22, 2011

---

JAMES R. BURDETT, Barnes & Thornburg, LLP, of Washington, DC, argued for appellant. With him on the brief were RICHARD B. LAZARUS; and THOMAS J. DONOVAN, of Chicago, Illinois.

SCOTT C. WEIDENFELLER, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were RAYMOND T. CHEN, Solicitor, and NATHAN K. KELLEY, Associate Solicitor.

---

Before BRYSON, MAYER, and DYK, *Circuit Judges.*

DYK, *Circuit Judge*.

Appellants Jeff Lovin, Robert Adams, Dan Kuruzar, and Dietmar Spindler[1] (collectively "Lovin") appeal a decision of the Board of Patent Appeals and Interferences ("Board") insofar as that decision held that claims 1–15, 17–24, and 30–34 of U.S. Patent Application No. 10/924,633 (the "'633 application") would have been obvious. *See Ex parte Lovin*, No. 2009-007018 (B.P.A.I. Feb. 25, 2010) ("*Board Decision*"). We affirm.

BACKGROUND

On August 24, 2004, Lovin filed the '633 application directed to "a method and system of friction welding." J.A. 103. In friction welding, a first part is rotated rapidly and brought into contact with a second part so that the heat generated between the parts fuses them together. This causes material from the parts to be displaced or "upset," reducing the combined lengths of the welded parts. The invention of the '633 application is designed to decrease the variation in upset between parts from repeated use of the welding machinery. This is done by modulating the torque applied to the rotating first part.

The '633 application has 34 claims. Claims 1, 8, 17, 23, 30, and 34 are independent claims; the remaining claims depend therefrom. Independent claim 1 is illustrative. The first step of this two-step method involves acquiring data during the welding of two sample parts and "calculating a profile" from the acquired data, including "determining the upset formation" of the sample parts at a variety of different speeds. J.A. 70. The second step

---

[1]   Dietmar Spindler is a named appellant, but, for an unknown reason, he was not listed on the official caption for this appeal.

involves friction welding two production parts and "continuously modulating the torque applied" to the first production part in accordance with the profile so that the "upset formation" of the production parts "substantially duplicates the upset formation of the . . . sample parts." *Id.*

At the heart of this dispute is whether Lovin, in his appeal brief before the Board, adequately provided arguments for the separate patentability of certain claims pursuant to 37 C.F.R. § 41.37(c)(1)(vii) ("Rule 41.37"). Rule 41.37 sets forth the requirements for argument in an appeal brief before the Board. It provides in relevant part:

> (vii) Argument. . . . For each ground of rejection applying to two or more claims, the claims may be argued separately or as a group. When multiple claims subject to the same ground of rejection are argued as a group by appellant, the Board may select a single claim from the group of claims that are argued together to decide the appeal with respect to the group of claims as to the ground of rejection on the basis of the selected claim alone. *Notwithstanding any other provision of this paragraph, the failure of appellant to separately argue claims which appellant has grouped together shall constitute a waiver of any argument that the Board must consider the patentability of any grouped claim separately. Any claim argued separately should be placed under a subheading identifying the claim by number. Claims argued as a group should be placed under a subheading identifying the claims by number. A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim.*

37 C.F.R. § 41.37(c)(1)(vii) (2007) (emphasis added).

Throughout prosecution before the examiner, Lovin had presented arguments with respect to the independent claims, but did not provide separate arguments for the dependent claims. *See, e.g.*, J.A. 198 (broadly applying conclusions about independent claim 1 to dependent claims 2–7 and 10–15, which were not separately argued). Even with respect to the independent claims, Lovin merely repeated the claim language and stated that the prior art did not contain those features. The examiner eventually rejected claims 1–24 and 30–34 for obviousness over three prior art references: (1) U.S. Patent No. 3,712,528 ("Takagi"); (2) U.S. Patent No. 4,757,932 ("Benn"); and (3) U.S. Patent No. 6,362,456 ("Ludewig").

Lovin filed his appeal brief to the Board on August 4, 2008. For the first time, Lovin attempted to address the patentability of the dependent claims by listing each claim under a separate subheading with separate arguments. While his arguments for independent claims 1 and 30 were relatively well-developed, his arguments for the dependent claims and the remaining independent claims were not. For the dependent claims, Lovin adopted the arguments from the corresponding independent claims, but with respect to the additional elements of the dependent claims, Lovin simply asserted that these elements were not present in the prior art and asserted non-obviousness over the combined teachings of the prior art. Lovin's argument for claim 11 demonstrates his general approach:

> Claim 11 is dependent on claim 1 and adds the step of "braking the one sample part during rotational deceleration of the one sample part." Claim 11 *thus recites the additional braking step for*

*which there is no corresponding step taught or suggested* in any of Benn et al., Takagi et al, and Ludewig et al. *The office action does not explain the lack of a teaching or suggestion of the step of claim 11 in the prior art. For at least this reason*, and the reasons noted above with respect to claim 1, *the combination of Benn et al. Takagi et al. and Ludewig et al. would not arrive at the claimed subject matter and the claimed subject matter would not have been obvious.*

J.A. 61 (emphases added). Similarly, Lovin's arguments for independent claims 8, 17, 23, and 34 merely adopted his arguments for independent claims 1 and 30, but did not explain why the additional features in those claims should be separately patentable. The examiner's answer responded to the arguments for each claim, citing the column and line number where the disputed elements could be found in the prior art. Lovin, however, declined to submit a reply to the examiner's answer.

The Board affirmed the examiner's rejection of claim 1 as obvious over the prior art. With regard to independent claims 8, 17, and 23, the Board found that Lovin had provided the "same rationale" for non-obviousness as for claim 1. Namely, Lovin disputed whether the prior art "continuously modulat[ed] the torque" applied to the first part. Because the Board found that one skilled in the art would have known to combine the teachings of Benn and Takagi to control the torque, the Board held that claims 1, 8, 17, and 23 would have been obvious.

The Board also affirmed the examiner's rejection of claim 30 as obvious over the prior art. With regard to independent claim 34, the Board found that Lovin had applied the same rationale as applied to claim 30. Namely, Lovin disputed whether the prior art contained a

"logic controller means" for storing certain information. The Board determined that Benn taught a microprocessor memory storing similar information and held that claims 30 and 34 would have been obvious.

The Board also affirmed the examiner's rejection of all the dependent claims, concluding that Lovin merely "point[ed] out what the claims recite and then assert[ed] that there [was] no corresponding combination of steps taught or suggested in the applied references." *Board Decision*, slip op. at 3. Invoking Rule 41.37, the Board concluded that: "[M]erely pointing out the differences in what the claims cover . . . is not a substantive argument as to the separate patentability of the claims. Accordingly, claims 2–15 and 17–24 stand or fall with claim 1, and claims 31–34 stand or fall with claim 30." *Board Decision*, slip op. at 3–4.

Lovin sought rehearing with respect to claims 2–15, 17–22, and 24, arguing that the Board had overlooked his separate patentability arguments and should have separately considered each claim. In denying rehearing, the Board held that Lovin's cursory arguments with respect to these claims did not satisfy Rule 41.37 because "the [a]ppellants' statement as to what each claim recites, followed by a statement that there is no corresponding step in the applied references, is tantamount to merely pointing out the differences in what the claims cover, and i[s] not a substantive argument as to the separate patentability of the claims." *Ex parte Lovin*, No. 2009-007018, slip op. at 4–5 (B.P.A.I. May 19, 2010); *see also* 37 C.F.R. § 41.37(c)(1)(vii) (2007). Judge Kratz dissented from the denial of rehearing and urged that some of the claims should have been separately considered. Appellants timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

On appeal, Lovin does not challenge the Board's rejection of independent claims 1 and 30 as obvious. The question, then, is whether the Board correctly interpreted Rule 41.37 in refusing to separately address the obviousness of claims 2–15, 17–24, and 31–34. Because these contested claims were treated as dependent claims,[2] we refer to them as dependent claims for the sake of convenience.

Lovin argues that his appeal brief before the Board satisfied Rule 41.37 because it contained separate headings and substantive arguments for each dependent claim. Lovin maintained that the only requirement for substantive argumentation for dependent claims is that the applicant "point out the essential elements as compared with prior claims and the inapplicability of the cited references, which ha[d] previously been discussed in the [applicant's] brief." Appellant's Br. 12–13 (quoting *In re Beaver*, 893 F.2d 329, 330 (Fed. Cir. 1989)). The PTO responded that, under long-standing Supreme Court authority, we should defer to the Board's interpretation of Rule 41.37 as requiring more than the truncated arguments appearing in Lovin's appeal brief.

The Supreme Court has long recognized that an agency's construction of its own regulations is entitled to substantial deference. In *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945), the Court deferred to the Office of Price Administration's interpretation of its own regulation and held that "the ultimate criterion [in

---

[2]     Claims 8, 17, 23, and 34, though formulated as independent claims, were treated as dependent claims because they merely confirmed the limitations of claim 1 and then added additional elements. Claims 2–7, 9–15, 18–22, 24, and 31–33 are explicitly dependent claims.

determining the meaning of the regulation] is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." Similarly, in *Auer v. Robbins*, 519 U.S. 452, 461 (1997), the Court sustained the Secretary of Labor's interpretation of its own regulation as "controlling" in an overtime pay dispute. *See also United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001) (granting "substantial judicial deference" to the Internal Revenue Service's "longstanding" reasonable interpretation of its own regulations); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (holding that the Department of Health and Human Services' interpretation of a regulation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation"); *Udall v. Tallman*, 380 U.S. 1, 16 (1964) (holding that when a regulation must be interpreted, "a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt").

Congress has delegated to the PTO the rulemaking power to "establish regulations, not inconsistent with the law, which . . . shall govern the conduct of proceedings in the Office." 35 U.S.C. § 2(b)(2) (2000); *see also Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1282 (Fed. Cir. 2005); *Stevens v. Tamai*, 366 F.3d 1325, 1333 (Fed. Cir. 2004). It is well-established that deference is owed to decisions of the PTO in interpreting these regulations. In *In re Garner*, 508 F.3d 1376, 1378 (Fed. Cir. 2007), we held that the PTO's interpretation of its own regulations is entitled to "substantial deference" unless the interpretation is "plainly erroneous or inconsistent with the regulation." *See also Star Fruits*, 393 F.3d at 1277 ("[The PTO's] interpretation of its own regulations is entitled to substantial deference and will be accepted unless it is plainly erroneous or inconsistent with the regulation."); *In*

*re Sullivan*, 362 F.3d 1324, 1326 (Fed. Cir. 2004) (same); *Eli Lilly Co. v. Bd. of Regents of the Univ. of Wash.*, 334 F.3d 1264, 1266 (Fed. Cir. 2003) (same).

Nonetheless, in *Garner*, 508 F.3d at 1378–79, and *Dethmers Manufacturing, Inc. v. Automatic Equipment Manufacturing Co.*, 272 F.3d 1365, 1370 (Fed. Cir. 2001), we held that the PTO must still follow judicial interpretations of PTO regulations set forth in the decisions of our court. However, the Supreme Court has made clear that this obligation is not absolute. In *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 982 (2005), the Supreme Court examined whether the stare decisis effect of an appellate court's interpretation would foreclose *Chevron* deference to an agency's subsequent, but contrary, interpretation of a statute. The Court held that a judicial interpretation would trump an agency's construction only if the judicial precedent "unambiguously foreclose[d] the agency's interpretation, and therefore contain[ed] no gap for the agency to fill." *Id.* at 982; *see also Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The principles in *National Cable* apply equally to an agency's interpretation of its own regulations. *See Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 502 (3d Cir. 2008) (holding that *National Cable* requires deference to the Security and Exchange Commission's amendments to a regulation over a prior contrary judicial interpretation); *see also Udall*, 380 U.S. at 16–17 ("When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."). Thus, we are obligated to follow our earlier judicial decisions—in the face of a new agency interpretation—only if we had found that the language in that decision "unambiguously foreclose[d]" the Board's interpretation. *Nat'l Cable*, 545 U.S. at 982.

Lovin contends that our decisions in *In re Nielson*, 816 F.2d 1567 (Fed. Cir. 1987), and *In re Beaver*, 893 F.2d 329 (Fed. Cir. 1989), represent such binding authority and should control the PTO's construction of Rule 41.37. However, neither of these cases directly confronted Rule 41.37 or its predecessor regulation, 37 C.F.R. § 1.192 ("Rule 1.192").[3] In *Nielson*, we held that the Board erred in rejecting certain dependent claims because Nielson had argued those claims separately before the examiner. 816 F.2d at 1570–71. Our opinion did not discuss the PTO's rules or the Board's interpretation of those rules. Though we found that Nielson's argument for the nonobviousness of certain claims was sufficient, we also held that the Board properly rejected certain other dependent claims because Nielson "did not challenge [those rejections] with any reasonable specificity."[4] *Id.* at 1572.

In *Beaver*, the applicant similarly provided little in the way of argument as to certain dependent claims. *See* 893 F.2d at 329–30. For instance, the following argument for a dependent claim was rejected by the Board:

---

[3] Rule 41.37 replaced Rule 1.192 in 2004. *See* Rules of Practice Before the Board of Patent Appeals and Interferences, 69 Fed. Reg. 49960, 49962 (Aug. 12, 2004).

[4] We also note that *Nielson* is consistent with the Board's interpretation of Rule 41.37. While Lovin never treated the dependent claims separately during prosecution, the applicant in Nielson "fully argued, in prosecution before the examiner, all the dependent claims." *Id.* at 1571. Unlike the bare argumentation here, Nielson directly pointed to evidence in the prior art that taught away from his invention. *Id.* ("Nielson correctly points out that [the prior art] teaches away from the formation of carbon dioxide snow in the pipeline because the reference stated that 'solid carbon dioxide particles deposit on surfaces and reduce their effectiveness . . . .'").

Claim 21 is based on claim 20, and further requires that the position of the film backup plate is adjustable relative to the front wall of the magazine, to achieve a fixed relationship between the lens mount and the film when the latter is against the backup plate.

*Obviously, neither [prior art reference] discloses an adjustable film backup plate.*

*Id.* at 330. (emphasis added). The Board found that, "apart from merely summarizing the subject matter" and "asserting that the references do not disclose the recited structure, appellant does not separately argue the merits of these claims." *Ex parte Beaver*, No. 87-3303, slip op. at 3 (B.P.A.I. Jan. 31, 1989). In so holding, the Board did not interpret or rely on predecessor Rule 1.192. We reversed the Board's rejection, finding that Beaver had "reasonably argued" all the dependent claims. *Beaver*, 893 F.2d at 330. We also noted that these claims, contrary to the situation here, had been separately argued before the examiner and that "[t]here [was] no basis whatsoever for the line drawn by the Board holding the argument for [independent] claim 20 sufficient and that for [dependent] claim 21 insufficient." *Id.* at 330. We thus "vacate[d] the Board's decision for failure to review all the appealed claims in accordance with 37 C.F.R. §§ 1.191, 1.192, and 1.196."[5] *Id.* at 329.

*Beaver* does not compel rejection of the Board's rationale in this case for two reasons. First, the rule gov-

---

[5]    37 C.F.R. § 1.191 (1989) governed the jurisdiction and timing of appeals to the Board. 37 C.F.R. § 1.196 (1989) governed how the Board may review an examiner's decision. Neither regulation is relevant to the present case.

erning assertions of separate patentability has gone through multiple and significant revisions, and the governing Rule 41.37 is different from the predecessor Rule 1.192 that was in place at the time of *Beaver*. The first version of the regulatory language at issue was promulgated in June 1988 and was the version in place at the time of the *Beaver* decision. This version provided that, for grounds of rejection covering more than one claim, it would be "presumed that the rejected claims stand or fall together" unless the appellant makes a statement to the contrary and "presents reasons as to why [the] appellant consider[ed] the rejected claims to be separately patentable." [6] *See* 37 C.F.R. §1.192(c)(5) (1988). In 1998, a new version of the rule was promulgated. This version had somewhat stronger requirements for the separate patentability of claims and specifically added cautionary language that "[m]erely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable."[7] *See* 37 C.F.R. § 1.192(c)(7)

---

[6]    37 C.F.R. § 1.192(c)(5) (1989) provided:

For each ground of rejection . . ., it will be presumed that the rejected claims stand or fall together unless a statement is included that the rejected claims do not stand or fall together, and . . . the appellant presents reasons as to why appellant considers the rejected claims to be separately patentable.

[7]    37 C.F.R. § 1.192(c)(7) (1998) provided:

For each ground of rejection which appellant contests and which applies to a group of two or more claims, the Board shall select a single claim from the group and shall decide the appeal as to the ground of rejection on the basis of that claim alone unless a statement is included that the claims of the group do not stand or fall together and, in the

(1998). The current rule came into existence in 2004 and retained the "merely pointing out" language from the 1998 version. *See* 37 C.F.R. § 41.37(c)(1)(vii) (2004). Because the court in *Beaver* could not and did not address the current version of the Rule containing the "merely pointing out" language, it cannot be a binding interpretation of the current rule's requirements. *See Sacco v. United States*, 452 F.3d 1305, 1308 (Fed. Cir. 2006) (finding that a prior case "is not binding precedent on [a] point because the court did not address the issue" in that prior case); *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1282 (Fed. Cir. 2002) ("[W]e are not bound by [a prior opinion] on the issue . . . since [that] issue was neither argued nor discussed in our opinion.").

Second, even if the current Rule 41.37 and predecessor Rule 1.192 (as it existed at the time of *Beaver*) were the same, the holding in *Beaver* appears to rest largely on the Board's perceived inconsistent treatment of the independent and dependent claims rather than any definitive interpretation of predecessor Rule 1.192. This is hardly surprising since the language governing the separate patentability of claims in Rule 1.192 did not even exist when Beaver filed his Appeal Brief before the Board on March 13, 1987. Moreover, even if *Beaver* had interpreted predecessor Rule 1.192, it certainly did not "unambiguously foreclose" the PTO's current interpretation of its own regulation, as required by the Supreme Court's

---

argument under paragraph (c)(8) of this section, appellant explains why the claims of the group are believed to be separately patentable. *Merely pointing out differences in what the claims cover is not an argument as to why the claims are separately patentable.*

(emphasis added).

decision in *National Cable*. *See Nat'l Cable*, 545 U.S. at 982.

Because our prior authority does not foreclose the Board from interpreting Rule 41.37 or foreclose us from deferring to the Board's interpretation, we must now consider whether the Board's interpretation should prevail. In *Star Fruits*, our court made clear that the PTO had authority by rule to require applicants to provide information to the PTO. 393 F.3d at 1284. There is no contention here that the PTO exceeded its authority in interpreting Rule 41.37 to require that applicants separately and comprehensively argue dependent claims.

As we held in *Sullivan*, we accept the Board's interpretation of PTO regulations unless that interpretation is "plainly erroneous or inconsistent with the regulation." 362 F.3d at 1326. Rule 41.37 provides:

> Notwithstanding any other provision of this paragraph, the *failure of appellant to separately argue claims which appellant has grouped together shall constitute a waiver* of any argument that the Board must consider the patentability of any grouped claim separately. Any claim argued separately should be placed under a subheading identifying the claim by number. . . . *A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim.*

37 C.F.R. § 41.37(c)(1)(vii) (2007) (emphases added). We conclude that the Board has reasonably interpreted Rule 41.37 to require applicants to articulate more substantive arguments if they wish for individual claims to be treated

separately.[8] Although Lovin properly included separate subheadings for each claim in his appeal brief as required by the rule, his arguments under those subheadings merely "point[ed] out what the claims recite[d] and then assert[ed] that there [was] no corresponding combination of steps taught or suggested in the applied references." *Board Decision*, slip op. at 3. The Board thus concluded that Lovin had waived any argument for separate patentability of claims 2–15, 17–24, and 31–34. This interpretation of Rule 41.37 is not manifestly unreasonable.

We note also that the Board's interpretation of Rule 41.37 is not new to this case. Rather, it reflects the Board's consistent interpretation of that rule since it was promulgated in 2004.[9] Thus, the Board's interpretation

---

[8]  In a recent paper, Chief Administrative Patent Judge Michael Fleming and three other judges from the Board directly addressed this point:

> Appellants will sometimes include separate subheadings for dependent claims, but [if] the . . . argument . . . merely states that the rejection should be reversed because the prior art does not disclose element x, where element x is merely a quote of the claim language, [and] *[t]his argument fails to include any explanation of why the art doesn't show element x or why the examiner's finding that the art does show element x is in error*, [t]he panel will usually not treat such an argument as an argument for separate patentability of the dependent claim.

Fleming, Michael et al., *Effective Appellate Advocacy in Ex Parte Appeals Before the Board of Patent Appeals and Interferences* 4–5 (Apr. 2010) (emphasis added).

[9]  *See, e.g., Ex Parte Pea*, No. 2008-005064, 2010 WL 373841 at *5 (B.P.A.I. Feb. 2, 2010) (where the appellants had reiterated the claim language found in certain de-

was the governing interpretation long before Lovin filed his appeal brief to the Board in August 2008.

In sum, we hold that the Board reasonably interpreted Rule 41.37 to require more substantive arguments in an appeal brief than a mere recitation of the claim elements and a naked assertion that the corresponding elements were not found in the prior art. Because Lovin did not provide such arguments, the Board did not err in refusing to separately address claims 2–15, 17–24, and 31–34.

**AFFIRMED**

---

pendent claims and stated that "[the prior art reference] does not disclose this aspect of the invention," the Board held that "a statement that merely points out what a claim recites is not a separate argument for patentability"); *Ex parte Carlsson*, No. 2007-2475, 2007 WL 4219726 at *6 (B.P.A.I. Nov. 29, 2007) (holding that "a recitation of what each claim state[d]" along with a "bald assertion, unsupported by specific arguments, that the claimed limitations [were] not disclosed in any proper combination of the prior art" was not a sufficient argument for separate patentability); *Ex parte Portnoy*, No. 2004-1461, 2005 WL 951657 at *2 (B.P.A.I. 2005) (where the appellant had "baldly asserted that the prior art [did] not teach or suggest the features of the[ ] claims," the Board held that "[p]ointing out what the claim requires with no attempt to point out how the claims patentably distinguish over the prior art does not amount to a separate argument for patentability").